(39 Misc. Rep. 323.)

### BARNETT v. WALKER.

(Supreme Court, Appellate Term. November, 1902.)

1. BOARDING HOUSE KEEPER—LIEN.
    Laws 1897, c. 118, § 71, as amended by Laws 1899, c. 380, gives the keeper of a hotel or boarding house a lien on the baggage or the property of the guest, unless such keeper knew that the property brought upon his premises was, when brought, not legally in possession of such guest or boarder. *Held* to give such keeper no lien on a sewing machine brought upon his premises by a boarder, where the legal right to the title and possession were then in another.

Appeal from municipal court, borough of Manhattan, Seventh district.

¶ 1. See Innkeepers, vol. 27, Cent. Dig. §§ 44, 46.

Action by Samuel Barnett against Barbara Ann Walker. From a judgment for defendant for the possession of a sewing machine, and for costs, plaintiff appeals. Reversed.

C. B. Plante, for appellant.
J. D. Montross, for respondent.

FREEDMAN, P. J.   This action was brought to recover the possession of a sewing machine detained by defendant, a boarding house keeper, under a claim of lien thereon for the amount of an unpaid board bill incurred by one Barnes. The said sewing machine was originally the property of one Fiske, plaintiff's assignor, who leased the same to Barnes under a written agreement, of which Barnes received a duplicate copy. Under that agreement, whether it be treated as a lease or a contract of conditional sale, the title remained in Fiske until full payment of the purchase price. By the subsequent default of and demand upon Barnes, Fiske became entitled to the immediate possession of the machine, and Barnes lost all right to the possession thereof. After such default and demand, and in violation of the said agreement, Barnes moved the machine to the premises of the defendant, and became a boarder of the defendant, and as such incurred a liability to the defendant for board to the amount of $32. Assuming that the defendant had no knowledge or notice of the rights of the true owner, and furnished the board in reliance upon a representation of Barnes that he was the owner, though the case contains no proof of such reliance, the only question to be determined upon this appeal is whether the defendant has a lien, as claimed, and may detain the machine by virtue of it, as against the plaintiff, the true owner.

At common law, a boarding house keeper had no lien. Cochrane v. Schryver, 12 Daly, 174. He was not bound to receive any one, except upon special contract. 1 Am. & Eng. Enc. Law (2d Ed.) 591, and cases there cited. The first statute in this state giving to a boarding house keeper a lien was chapter 446 of the Laws of 1860, by which a lien and right to detain was given to the same extent and in the same manner as innkeepers have such lien and right of detention. In 1876 this statute was amended (Laws 1876, c. 319) by adding to the original act the following, viz.:

"Nothing herein shall be deemed to give to any boarding house keeper any lien upon or right to detain any property the title to which shall not be in said boarder."

On the other hand, the innkeeper had a lien at common law upon the goods of a guest, for the reason that he was compelled to accept all guests who presented themselves, and was liable to pay for all property lost or stolen while the guest remained, and nothing excused him from this liability but the act of God or the public enemy. On account of this extraordinary liability the law gave the innkeeper a lien upon the goods of his guest for the satisfaction of his reasonable charges. This lien extended to property brought by the guest and not owned by him. Jones v. Morrill, 42 Barb. 623. But he had no lien on the goods of a boarder. In this country many hotel

'keepers act in a double capacity, being both innkeepers and boarding ·house keepers. As innkeepers, they entertain travelers and transient persons, those who come without bargain as to time and price, and go away at pleasure, paying for only the actual entertainment ·received. As boarding house keepers, they entertain residents and .regular boarders and lodgers for definite lengths of time and at speci- .fied prices previously agreed upon.

In the course of the codification of the general laws of this state, ·the legislature in 1897 passed chapter 418 of the Laws of 1897, en- ·titled "An act in relation to liens, constituting chapter forty-nine of the General Laws." Section 1 provides that "this chapter shall ·be known as the lien law." Its provisions cover (1) mechanics' liens; (2) liens on vessels; (3) liens on monuments, gravestones, and ceme- ·tery structures; (4) liens for labor on stones; (5) liens for service ·of stallions; (6) other liens on personal property; (7) enforcement ·of liens on personal property by sale; (8) chattel mortgages; and (9) contracts for the conditional sale of goods and chattels. It repealed ·the following acts concerning liens for the benefit of hotels, inns, and ·boarding and lodging houses, viz.: Laws 1860, c. 446, as amended ·by Laws 1876, c. 319; Laws 1894, c. 253; Laws 1895, c. 884. In the place of the acts thus repealed, and for the purpose of consolidat- ·ing them, as appears from the report of the statutory revision commission, section 71 of said act was passed, which reads as follows, viz.:

"Sec. 71. A keeper of a hotel, inn, boarding house or lodging house, except ·an emigrant lodging house, has a lien upon while in possession, and may de- ·tain the baggage and other property brought upon their premises by a guest, ·boarder or lodger, for the proper charges due from him, on account of his ·accommodation, board and lodging and such extras as are furnished at his ·request. If the keeper of such hotel, inn, boarding or lodging house knew ·that the property so brought upon his premises was not, when brought, le- ·gally in possession of such guest, boarder or lodger, a lien thereon does not ·exist."

.The amendment of this section by chapter 380 of ·the Laws of 1899 further provided that if the keeper of such hotel, inn, boarding house, or lodging house, had notice that such property was not then .the property of such guest, boarder, or lodger, a lien thereon does not exist. We have thus, in the new section passed to supersede the prior law upon the subject, a consolidation of a statute, by which a ·lien ·unknown to the common law was given to a boarding house keeper, ·but which at the same time provided that he should have no .lien upon goods brought to him by a boarder who held no title to them, ·with a rule of the common law which gave to an innkeeper a 'lien ·upon all property brought by a guest and denied to him a lien ·in .the .case of a boarder. But the act is silent as to the persons against whom the lien may be enforced and as to the extent of the ·lien. What, then, is the extent of the lien given by this new section ·to a boarding house keeper, and against whom can it be enforced?

The respondent claims, and the judge below held, that it was the intention of the legislature to give to boarding house keepers the same lien upon the effects of their boarders as the common law gave ·to innkeepers upon all goods brought by their guests. But this is ·evidently too broad a construction. In my judgment the section

referred to must be treated as a new enactment, and, as such, construed in connection with the constitutional provision that the real owner shall not be deprived of his property against his consent without due process of law. The universal and fundamental principle of our law of personal property is that no man can be devested of his property without his own consent, and, consequently, that even a bona fide purchaser from a person in the possession of property, who has no title to it and no authority whatever from the owner to sell or dispose of it, cannot acquire any title against the true proprietor. Williams v. Merle, 11 Wend. 80, 25 Am. Dec. 604; Ely v. Ehle, 3 N. Y. 509; Everett v. Coffin, 6 Wend. 603, 22 Am. Dec. 551; Everett v. Saltus, 15 Wend. 474; Saltus v. Everett, 20 Wend. 269, 32 Am. Dec. 541.

To whatever and however numerous exceptions this rule of our law may be subject, it is unquestionably, in the language of Senator Verplanck, in the case last referred to, the general and regulating principle, modified only by the absolute necessity or the obvious policy of human affairs. Thus the law will in many cases imply an authority from the owner to sell, and where the owner has conferred an apparent right of property upon the vendor, or an apparent right of disposal, and has furnished the vendor with the external indicia of such right, and the vendor has sold the goods and delivered the possession thereof, the law will protect a purchaser, who has acquired the property for a fair and valuable consideration, in the usual course of trade, and without any notice of any conflicting claim or of suspicious circumstances calculated to awaken inquiry or to put him on his guard, although the goods were in fact obtained by the vendor from the true owner fraudulently. But, as long as an owner has not by his own acts created a situation from which an authority to sell may be implied, he is in a position to invoke the protection extended to him by the constitutional provision to the effect that he shall not be deprived of his property except by due process of law. The mere parting with the possession of goods has never been held sufficient to deprive him of the constitutional protection. The same reasoning applies whenever it is attempted to subject the property of an owner to a lien for acts done by another. In the case at bar, Barnes, at the time he brought the sewing machine into the house of the defendant, had neither title nor right of possession to it. He had forfeited the right of possession, and had nothing to show by which the defendant could have been misled. On the contrary, the written agreement under which he had originally obtained possession showed that he had neither title nor right of disposition. The consequence is that to construe section 71 of the lien law as contended for by the defendant would be in violation of the constitutional provision above referred to.

In this state, the question as to the constitutionality of an act granting to an innkeeper or boarding house keeper a lien as against the rights of a true owner has never been passed upon; but in other states it was held that, since the passage of a similar constitutional provision, an act granting such a lien would be unconstitutional, and that consequently a course of reasoning cannot be sanctioned by

which the conclusion is arrived at that the legislature intended to preserve a rule of the common law, by enacting a statute the terms of which are suspectible of a construction not in conflict with the constitutional provision. Wyckoff v. Hotel Co., 24 Mo. App. 382; McClain v. Williams, 11 S. D. 227, 76 N. W. 930, 49 L. R. A. 610, 74 Am. St. Rep. 791. An analogous question arose in this state as to the lien of a warehouseman, under chapter 663 of the Laws of 1895, and the act was held to be unconstitutional. Milligan v. Storage Co., 34 Misc. Rep. 55, 68 N. Y. Supp. 744.

Section 71 of the lien law of this state must therefore be construed as not preserving the rule of the common law, which gave to an innkeeper a lien upon all the goods brought by his guest, whether owned or not owned by the latter, and as authorizing only the detention of goods brought in by the guest to the extent of his interest in them, if he has any. If, therefore, the lien of a boarding house keeper upon goods brought by the boarder is now coextensive with the lien of an innkeeper upon the goods of a guest, which may be assumed for the purposes of the present discussion, although section 71 does not say so in express terms, it does not cover property of a boarder to which he had neither title nor right of possession. The fact that in the concluding part of the section it is provided that, if a keeper of a hotel, inn, boarding house, or lodging house knew or had notice that the property brought upon his premises was not, when brought, legally in the possession of the guest, boarder, or lodger, a lien thereon does not exist, can make no difference. Because the legislature saw fit to express one limitation, it does not follow that there should be no other, especially where the extent of the lien has not been defined by the act, and a constitutional provision calls for a further limitation.

The judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event.

BLANCHARD, J., concurs in result.

MacLEAN, J. (concurring). The facts agreed upon are: A sewing machine belonging to one Fiske was leased by him to Barnes under a writing binding Barnes to pay certain rental monthly, and not to remove the machine from the premises he was occupying without the consent of Fiske. Barnes did not perform his covenants. After his default, and when Fiske was entitled to retake the machine, Barnes removed it to the premises of the defendant, with whom he became a boarder. Thereafter Fiske transferred his rights to the New Haven Sewing Machine Company, which in turn transferred them to the plaintiff. Proper demand was made for the chattel, delivery of which was refused by the defendant, who claimed a lien thereon. Upon removing it to the house, Barnes represented to the defendant that he was the owner of the machine. He incurred liability for board to the amount of $32, for which the defendant claims a lien, and that her lien is superior to the rights of the plaintiff under section 71 of the lien law, providing:

"A keeper of a hotel, inn, boarding house, or lodging house * * * has a lien upon while in possession, and may detain the baggage and other prop-

erty brought upon their premises by a guest, boarder, or lodger, for the proper charges due from him on account of his accommodation, board, and lodging."

This deliverance of the statutory revision commission may not merit the neighborly comment bestowed in 34 Misc. Rep. 56, 68 N. Y. Supp. 744, upon chapter 663 of the Laws of 1895, relating to liens of warehousemen; but, taken literally and alone, these words seem to support the position of the defendant. Given the defendant's interpretation, of which it is capable, and viewed apart from the co-existing body of law, written and unwritten, recognizing rights of property and of possession in persons beside the keepers of inns or boarding houses and their customers, this section of the· lien law would impute to the legislature an intention in part to nullify the fifth amendment of the constitution, and repeal many statutes of principle and of procedure, and of police regulation, all in the special interest of purveyors of food and shelter and attendance. Thus interpreted, the section would practically empower persons to pledge articles in or to which they had no legal right in such a way that those rightfully entitled to their possession would have to redeem them or abandon their property, and would, among other things, help the keepers of hotels of melancholy prænomen to add receiving stolen goods to their present occupations, already too multifarious. The mischievous and absurd consequences of the verbal interpretation contended for move the more toward considering the section upon which depends the position of the defendant in the light of reasonable purposes, and in connection with the remainder of this and other acts relating to liens upon chattels and their enforcement, and to hold, following long-accepted precedent (Willis v. Warren, 1 Hilt. 590, 594), that the act only authorizes innkeepers to detain the goods actually brought in by guests, subject to the ascertainment by legal process of the legal relations of all parties concerned.

Judgment reversed, and new trial ordered, with costs to appellant to abide event.