MILDRED SHEARMAN, Appellant, *v.* THE IROQUOIS HOTEL
AND APARTMENT Co., Respondent.

(Supreme Court, Appellate Term, December, 1903.)

Lien of lodging house keeper — When an occupant is a tenant and not
a lodger — Lien Law of 1899, ch. 380, § 1.

    Under a lease for a year, of an unfurnished suite of apartments in
an apartment house, describing the parties as landlord and tenant
and giving the landlord no right to enter except to repair or alter,
the occupant is not a lodger and is a tenant, and therefore the land-
lord can have no lien under L. 1899, ch. 380, § 1, against him as
"lodger" upon furniture of his wife, which he brought into the
suite without the landlord's knowing that the furniture was not
legally in his possession, for rent and for meals and supplies fur-
nished him and his wife from the restaurant of the apartment
house — and the landlord probably would have no lien upon such
furniture if the tenant were a mere lodger.

APPEAL by plaintiff from a judgment of the Municipal
Court of the city of New York, tenth district, borough of
Manhattan, in favor of defendant.

Action of replevin.

  Thomas P. Hall, for appellant.

Niles & Johnson, for respondent.

BLANCHARD, J. The plaintiff's furniture was in the
apartments which were in the possession of her husband,
by virtue of a formal lease in writing, executed and deliv-
ered to him by the defendant. This lease is for a term
of one year, the rent being payable monthly in advance,
and has all the covenants usually contained in a lease of
premises in an apartment-house, subject, however, to cer-
tain rules which the landlord has imposed as to the use
of the premises. In this lease plaintiff's husband is des-
ignated as the tenant, and the defendant as the landlord.

By the terms of the lease the absolute right of use and
occupation of the demised premises is given to the plain-

tiff's husband, for the purpose of a dwelling for himself and family, and the defendant has no right to enter upon the premises except for the purposes of making repairs or alterations.

The apartments were not furnished when rented, and the furniture belonging to the plaintiff, the wife of the tenant, was brought into the apartments to make the same habitable. The defendant's contention is that it has a lien on this furniture for the amount owing by plaintiff's husband for rent and for certain meals and supplies furnished him and the plaintiff from the defendant's restaurant, which is in the same building.

The lien is claimed under and by virtue of Laws of 1899, chapter 380, which reads as follows:

"SECTION 1. Section seventy-one of chapter four hundred and eighteen of the laws of eighteen hundred and ninety-seven, entitled 'An act in relation to liens, constituting chapter forty-nine of the general laws,' is hereby amended so as to read as follows:

"§ 71. Liens of hotel, inn, boarding and lodging house keepers.—A keeper of a hotel, inn, boarding house or lodging house, except an emigrant lodging house, has a lien upon, while in possession, and may detain the baggage and other property brought upon their premises by a guest, boarder or lodger, for the proper charges due from him, on account of his accommodation, board and lodging, and such extras as are furnished at his request. If the keeper of such hotel, inn, boarding or lodging house 'knew that the property so brought upon his premises was not, when brought, legally in possession of such guest, boarder or lodger, or had notice that such property was not then the property of such guest, boarder or lodger, a lien thereon does not exist.

"§ 2. This act shall take effect immediately."

In support of its contention the defendant asserts that the plaintiff's husband was a lodger in its hotel, and that the furniture was brought upon the premises by him, and that when it was brought there it did not know that it was not legally in his possession.

There have been many decisions by the courts attempting to define accurately the words " hotel, inn, boarding house, lodging house, guest, boarder and lodger," as used in the statute.

Perhaps the most instructive upon the general subject is that in Cromwell v. Stephens, 2 Daly, 15. It is not necessary, however, to contribute anything further here to the discussion of the meaning of these terms, except in so far as it may be required in connection with the defendant's claim that the plaintiff's husband was a " lodger " within the intent of the Lien Law.

In Toms v. Luckett, 5 C. B. 38, Maule, J., states: " Where the owner of a house takes in a person to reside in a part of it, though such person has the exclusive possession of the rooms appropriated to him, * * * yet, if the owner retains his character of master of the house, the individual so occupying part of it, occupies it as a lodger only, and not as a tenant * * * The question depends upon whether or not the owner of the house resides upon the premises, retaining his quality of master, and reserving to himself the general control and dominion over the whole.

"If he does, the inmate is a mere lodger. That is the fundamental proposition, that the landlord must reserve control and dominion over the house. If all you have done is to give up your house to another person to live in, he is your tenant * * *. Therefore, if you go out and give up the house to him you do not take him as a lodger." In Allan v. Overseers of Liverpool, L. R., 9 Q. B. 191, it is stated: " The person who is supposed to take another person in as a lodger must retain such power in, or dominion over, the house as a master reserves to himself in his family." In the same case, Cotton, L. J., writes: " In order to constitute a man a lodger, he must be lodging in the house of another, and he must be lodging with that other person." Writing in the same case, Lindley, L. J., states: " It is not easy to give a general definition of the term ' lodger,' but it involves more than the word ' tenant.' There is a personal relation. A lodger lodges with somebody who has control over the place where the party lodges * * *. The

question whether a person is a lodger or not depends partly on the contract between him and his landlord, and partly on the fact that the landlord retains control and dominion over the house." The rule laid down in the American cases is to the effect that "Should a lodger, however, lease apartments in a house and take full possession and control, the relation of landlord and tenant would at once be established. The distinction is in the keeper reserving to himself the legal possession, custody and care of the whole house." 13 Am. & Eng. Encyc. of Law (1st ed.), 1004, citing cases.

In Porter v. Merrill, 124 Mass. 534, Ames, J., writes: " The written contract declared upon purports to be a lease, for a precise time (twelve months) and at a definite weekly rate, of certain specific rooms, so separated from all other rooms in the same house as to become in fact and in law the separate tenement of the lessees. It thus had the ordinary characteristics of a lease, and is not the case of a contract between the keeper of a boarding house and a lodger. See White v. Maynard, 111 Mass. 250. * * * The fact that besides leasing the rooms, the lessor undertakes to furnish certain specific accommodations and imposes certain restrictions as to the manner in which the premises are to be occupied or used, does not change the essential character of the instrument."

Tested by the rule established by the above cited authorities, the plaintiff's husband was not a lodger in defendant's hotel, but the tenant of the defendant, having the exclusive right of possession and control of a separate and complete suit of apartments therein. The very form and terms of the lease negative the idea that the defendant intended that the plaintiff's husband should be regarded as a mere lodger, while they do indicate clearly that it was intended that the lease should create between the parties the conventional relation of landlord and tenant. There is nothing in the lease itself from which the conclusion could be reached that the defendant assumed the liabilities of a lodging-house keeper in respect to the plaintiff and her husband, or in respect to their property within the premises rented. Indeed, it would seem that the lease was so termed as to avoid such liability.

Misc.]    Supreme Court, Appellate Term, December, 1903.

It is true the defendant was obliged to render certain service to the plaintiff's husband in connection with his use of the premises by himself and family, but it does not appear but that the tenant could have waived this service, and, in any event, these services did not interfere with or limit the tenant's right of use and occupation.   This being so, the defendant could have no lien on the plaintiff's furniture under the Lien Law.

It may also be observed here that it is extremely doubtful whether any lien could have been attached to the furniture in defendant's favor, even had the plaintiff's husband been a mere lodger.   McIlvane v. Hilton, 7 Hun, 594; Barnett v. Walker, 39 Misc. Rep. 323.

The judgment appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

FREEDMAN, P. J., and BISCHOFF, J., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.