Mary Mathews *vs.* William F. Livingston et ux.

First Judicial District, Hartford, October Term, 1912.
Hall, C. J., Prentice, Thayer, Roraback and Wheeler, Js.

The distinction between a lodger and a tenant is a substantial one, since the goods of the lodger are subject to a lien for unpaid rent, while those of a tenant are not.

Whether one is a tenant or a lodger depends upon the terms of the contract of hiring as interpreted in the light of the surrounding circumstances and with a view of ascertaining and effecting the intent of the parties; and this question is a mixed one of law and fact.

Mathews *v*. Livingston.

Where one hires and takes the exclusive possession, use and care of certain rooms in a lodging-house, the law will presume, in the absence of any contract provision or extraneous circumstance indicating a contrary purpose, that the parties intended to create the relation of landlord and tenant and not that of lodging-house keeper and lodger.

In the present case the plaintiff claimed damages for the alleged forcible seizure and detention of certain household goods owned by her while an occupant of rooms in the defendants' house, for wrongfully evicting her from such rooms, and for assaulting and beating her. The trial court, after calling the attention of the jury to such evidential circumstances as were material in determining whether the plaintiff were to be regarded as a lodger or a tenant, explicitly instructed them that if she were a lodger and not a tenant the defendants would be entitled to a lien upon her goods for any unpaid rent, and that the plaintiff could only regain her goods by paying such rent. *Held* that this instruction substantially complied with the defendants' request and was all they were entitled to.

A lodging-house keeper has no right in any event to use more force than is reasonably necessary to prevent his lodger from removing goods which are subject to a lien for unpaid rent.

The plaintiff claimed that the tortious acts alleged were committed jointly by the defendants, who were husband and wife; while the defendant wife insisted that, if committed at all, they were done by her husband without her knowledge and against her wishes. The jury were told that if the husband acted alone and independently of his wife, he alone would be liable, but that if she acted alone, or if he acted as her agent, or if she knew and acquiesced in his acts without objection, she would be liable; and that if they acted in concert each would be liable. *Held* that such instruction was accurate and adequate and gave the defendant wife no just cause for complaint.

Damages recoverable for an unlawful eviction of a tenant should include the present net value of the unexpired portion of the lessee's term, and may also include his mental suffering, exposure, loss of time, expenses of attempting to regain possession, and the value of his household effects, if they are seized and converted in the course of the eviction.

The amount recoverable for household furniture which has been converted, is not merely what it would cost to replace it in the market, but rather what would be a fair and full compensation to the owner for his pecuniary loss, disregarding any sentimental value. Accordingly, evidence of the market value of second-hand furniture of like kind and condition with that converted, is not admissible upon the part of the defendant as tending to prove the measure of the plaintiff's loss.

A witness who has no knowledge of the market value of second-hand

Mathews *v.* Livingston

articles at a given time and place is not qualified to express his opinion upon that subject.

In the present case the plaintiff was permitted to recover for expenses incurred by her in sending a team a second time for her goods, after her first demand for them had been peremptorily refused. *Held* that the allowance of this item was improper under the circumstances, but that the error was too trivial to justify a new trial.

Evidence that the defendant wife first leased the premises to the plaintiff and upon their surrender by the plaintiff used them for lodgers, and within a few days rented the two rooms in question to the plaintiff, would have warranted the jury in finding that such defendant owned the premises in the absence of all evidence to the contrary.

The rule that the title or ownership of real estate must be proved by deed does not apply where the question of ownership comes up only incidentally and collaterally. Under such circumstances a qualified witness may testify orally as to the ownership of the property, and a wife may testify, and so may her husband living with her in occupation of property, as to her ownership of it.

For nearly two years no mention was made in any of the plaintiff's repeated pleadings of any assault upon her by either of the defendants. *Held* that such omission, if unexplained, was a circumstance which the jury were entitled to consider as evidence duly submitted, and therefore the exclusion of these pleadings, when offered in evidence by the defendants to show such omission, constituted reversible error, notwithstanding they formed part of the file which went into the jury-room.

A verdict ought not to be disturbed for a slight inaccuracy in a single expression in a charge to the jury which is otherwise, and as a whole, correct and adequate.

A failure to comply with a request to charge becomes of no importance if the verdict negatives the existence of the subject-matter of the request.

Argued October 2d—decided December 19th, 1912.

ACTION to recover damages for an alleged forcible seizure and detention of household goods belonging to the plaintiff, for wrongfully evicting her from rooms hired by her in the defendants' house, and for assaulting and beating her, brought to the Court of Common Pleas in Hartford County and tried to the jury before *Coats, J.;* verdict and judgment for the plaintiff for $474, and appeal by the defendants. *Error and new trial ordered.*

*John J. Dwyer*, for the appellants (defendants).

*James B. Henry* and *Terry J. Chapin*, for the appellee (plaintiff).

WHEELER, J.   Mrs. Livingston, one of the defendants, lived with her husband, the other defendant, in a house owned by her, in which she conducted a lodging-house and rented to the plaintiff, Mrs. Mathews, two rooms for $2.50 a week, in place of the regular rate of $4.   The plaintiff furnished her rooms, getting her own meals and taking the entire care of the rooms, in which she stored her furniture.   She continued in their occupancy for sixteen days.   She claimed that she had paid part of the rent due in cash and part in work, and that Mrs. Livingston had discharged her from further obligation therefor, and that while she was preparing to vacate the rooms the defendants took possession in her temporary absence, demanded a large sum for unpaid rent, forcibly evicted her, converted her goods and assaulted her; for all of which acts she brings this action to recover damages.

The defendants claimed that Mrs. Livingston rented these two rooms to the plaintiff as a lodger, and that she was indebted for their rent; that she had a lien upon the goods of the plaintiff for such debt, but that she did not convert said goods, or evict, or assault, the plaintiff; and that her husband, knowing of the plaintiff's intention to move, and of her debt, contrary to Mrs. Livingston's wishes and without her knowledge or consent, evicted the plaintiff, and refused to allow her to remove said goods until the debt due for the rent was paid; and both defendants claimed that at no time did Mr. Livingston assault Mrs. Mathews.

The chief ground of complaint of the defendants with the charge is the manner in which the court submitted

to the jury the question of whether the relation arising between the parties in the hiring of these rooms was that of landlord and tenant, or that of lodging-house keeper and lodger.

The distinction in law between a tenant and a lodger is a substantial one: the tenant may maintain ejectment and trespass; the lodger may not. Upon the goods of the lodger his landlord has a lien for unpaid rent; upon those of his tenant he has no lien. The relation established by the hiring of rooms in the house of another depends upon the contract of hiring, gathered from its terms and interpreted in the light of the surrounding circumstances, having in end the finding of the intention of the parties to the contract. *Linwood Park Co.* v. *Van Dusen,* 63 Ohio St. 183, 200, 58 N. E. 576; Jones on Landlord & Tenant, § 23. Ordinarily the landlord furnishes the lodger with a furnished room or rooms, whose care the landlord has, and whose habitation and enjoyment he gives to the lodger, while he himself retains the occupation. The tenant has the exclusive possession of his rooms, while the lodger has merely the use without the actual or exclusive possession, which remain in the lessor. It is a mixed question of law and fact.

But when it appears that the hirer of rooms in a building devoted to a lodging-house secures the exclusive possession of certain rooms therein, over which the lodging-house keeper retains no control, the law, in the absence of provision of the contract or extraneous circumstance indicating a contrary intention, will presume that it was the intention of the parties to create the relation of landlord and tenant, and not that of lodging-house keeper and lodger. *White* v. *Maynard,* 111 Mass. 250, 254; *Swain* v. *Mizner,* 8 Gray (Mass.) 182, 184; *Messerly* v. *Mercer,* 45 Mo. App. 327, 330; *Oliver* v. *Moore,* 53 Hun, 472, 474, 475, 2 N. Y. Supp.

413; *Shearman* v. *Iroquois Hotel & A. Co.*, 85 N. Y. Supp. 365; 1 Tiffany on Landlord & Tenant, §8; 25 Cyc. 1539. Circumstances showing that the care of the rooms was in the hirer, who procured her own board and furniture, tend to prove the exclusiveness of possession of the hirer. That the price charged was at the rate made to a tenant rather than to a lodger, and that the wording of a receipt "for rent" for moneys paid for the use of rooms, would tend to prove that the parties intended to create the relationship of landlord and tenant rather than that of lodger.

In view of the undisputed evidence in this case tending to show that the relationship was that of landlord and tenant, and that the parties so intended, the court might well have instructed the jury that if they found the facts to be such as this evidence tended to prove, they should find the relationship that of landlord and tenant, and therefore that the defendants had no lien for unpaid rent upon the goods of the plaintiff. We think the charge of the court, viewed as a whole, fairly presented the question of this relation to the jury.

One part of a somewhat lengthy discussion of this question is open to criticism: the court there said that if either party regarded the plaintiff as a tenant, and was justified by the evidence in so regarding, the relation of tenant attached and the lien could not exist.

If this instruction limited the finding of the relation to the opinion entertained by one of the parties to the contract, it was obviously erroneous, but it could not have been so understood, since it was coupled with a further condition that this conclusion must be justified by the evidence; and that depended upon the consideration of the several circumstances pointed out by the court as tending to prove the relation, weighed in the light of the law—all of which the court had fully stated to the jury. The jury having by their verdict found

the relation of landlord and tenant to exist, we should not feel justified upon the evidence in disturbing the verdict, although we might find that the instruction given was in a single particular inaccurate.

The court explicitly instructed the jury that if the plaintiff was a lodger and not a tenant, the defendants had, under § 4165 of the General Statutes, a lien for any unpaid rent due upon the goods contained in the rooms occupied by the plaintiff, and might enforce the same, and that the plaintiff must discharge the lien by paying the unpaid rent before she would have a right to recover her goods. This substantially accorded with the defendants' request to charge, and was all that they were entitled to.

They further asked for an instruction that "in attempting to enforce said lien the defendants, and particularly Bridget Livingston, had a right to use so much force as was necessary to prevent any property kept in said house by the plaintiff from being removed therefrom until the amount of said lien was paid." This request was properly refused. The defendants were in no event entitled to use more force than was reasonably necessary, and this instruction was not thus limited.

The failure to charge in this particular, had the request been properly framed, became unimportant, in view of the verdict of the jury finding that the plaintiff was a tenant and not a lodger.

Mrs. Livingston claimed that the court did not charge the jury in compliance with her request, that if the acts complained of were done by her husband without her knowledge and against her wishes, she was not liable.

The court instructed the jury that if, in what was done, the husband acted alone and independently of his wife, he alone would be liable, but that if she acted alone, or if he acted as her agent, or if she knew and

acquiesced in his acts without objection, she would be liable, and that if both acted in concert each would be liable.

This instruction was adequate and accurate.

The court further instructed the jury that if they found the plaintiff was a tenant and was unlawfully evicted, she might recover "all the damages which she suffered directly on account of the defendants, or either of them, wrongfully taking possession of her premises; and it would include the mental suffering, the exposure, the time which she had lost, and the expense she was put to in endeavoring to recover possession; and also, if in connection with this unlawful eviction she lost her property, she can recover her property also." This instruction is complained of.

The court should have included, within its specification of the elements of damage directly suffered, the rental value of the rooms less the amount of rent unpaid, in other words, the present value for the unexpired term of the lessees' hiring. 3 Sedgwick on Damages (9th Ed.) § 988; *Amsden* v. *Atwood,* 69 Vt. 527, 532, 38 Atl. 263; *Mack* v. *Patchin,* 42 N. Y. 167. But the damage for this element was, at most, a nominal sum; and moreover the charge is not complained of on this ground. The elements specified which are complained of were subjects of damage which might properly have followed as a consequence of an eviction and conversion, and, as these are alleged, they were proper subjects of recovery so far as proved. *Moyer* v. *Gordon,* 113 Ind. 282, 288, 14 N. E. 476; 3 Sedgwick on Damages (9th Ed.) § 988.

The charge of the court upon exemplary damages, so-called, followed our rule.

A further ground of complaint was the refusal to charge, as requested, that the damages for the conversion should be limited to "the fair value" of "what

it would cost to replace the property with other property of like kind and condition, and in addition thereto the amount of any damage or loss which you find she has sustained by being deprived of said property;" and that damages which were mere speculation, guess or surmise, could not be awarded.

This request was contrary to the rule laid down in *Barker* v. *Lewis Storage & Transfer Co.*, 78 Conn. 198, 61 Atl. 363. The court reiterated this rule in the course of the trial, and in the charge instructed the jury that the mere market value of household furniture was not the measure of damages in case of its conversion, but rather fair and full compensation to the owner for his pecuniary loss, disregarding any sentimental value. The jury were sufficiently instructed, under the circumstances of the case, and could not, without disregarding the instruction given, have awarded speculative damages; nor, in view of the repeated instructions during the presentation of the evidence, was there occasion for particularizing as to what fair compensation consisted of.

Various rulings on evidence are complained of. For the purpose of proving the value of a sewing-machine, one of the articles of furniture claimed to have been converted, the defendants offered to prove by the witness Phelps the market value of a second-hand machine equally as good as the one converted. The court excluded the question in that form. The defendants thereupon confined the offer to its value in the month of the claimed conversion. The court admitted the question, provided the witness could say he knew such machines had a market value at that time. The witness was unable to so testify, and the question remained unanswered.

We see no reversible error in these rulings. If the witness had no knowledge of the market value at the

time and place in question, he was not qualified to express an opinion. In *Barker* v. *Lewis Storage & Transfer Co.*, 78 Conn. 198, 61 Atl. 363, we held that in an action for conversion of household furniture in the use of an owner, evidence of the market value of second-hand furniture of the same kind and condition would not be admissible as tending to prove the measure of loss or an element in it.

The plaintiff offered evidence of her expense in hiring a team to remove the goods, which the defendants prevented. Such expense was properly incurred in the first instance in which the team was sent for the goods, and if the circumstances made it reasonable to send it a second time, that expense would have been justified. But in this case nothing in the circumstances showed that it was reasonable to continue to send teams to get these goods after the first demand had been peremptorily and positively refused. The evidence of expense succeeding the first demand was improperly allowed. The judge's statement in admitting the evidence, that "if he had sent a team there every day for a month that you [the defendants] would have to pay the bills, providing you were keeping the goods wrongfully," was clearly wrong. Even though a part of this expense was erroneously incorporated in the judgment, it is an inconsiderable sum and too inconsequential an error upon which to predicate a new trial. *Chany* v. *Hotchkiss*, 79 Conn. 104, 108, 63 Atl. 947; *Buddington* v. *Knowles*, 30 Conn. 26; *Old Saybrook* v. *Milford*, 76 Conn. 152, 157, 56 Atl. 496; *Bogudski* v. *Backes*, 83 Conn. 208, 214, 76 Atl. 540.

The plaintiff was permitted on cross-examination of the defendant husband, to inquire who owned the house in which were the two rooms from which the plaintiff was evicted, and he replied his wife. It appeared, among the undisputed facts, that Mrs. Living-

Mathews *v.* Livingston.

ston first leased these premises to the plaintiff, and upon their surrender conducted a lodging-house in the premises, and in a few days rented the two rooms in question to the plaintiff. It would have been entirely competent from this evidence of possession of the premises, coupled with these acts of ownership, in the absence of all evidence to the contrary, to have found Mrs. Livingston to be the owner of the premises she occupied and treated as her own. Wigmore on Evidence, §§ 2515, 1779. So that the testimony of the husband did not introduce into the case a new fact, but one already legally established. Aside from this, the rule that title and ownership of real property may not, as that of personal property, be proved by the opinion of those qualified to speak, since it is not the best evidence, is well established. *De Wolf* v. *Williams,* 69 N. Y. 621; *Pichler* v. *Reese,* 171 N. Y. 577, 64 N. E. 441; *Steiner Bros & Co.* v. *Tranum,* 98 Ala. 315, 318, 13 So. 365; *Murphy* v. *Olberding,* 107 Iowa, 547, 548, 78 N. W. 205. Nevertheless this rule applies when the issue of title or ownership is directly involved, and not when it is collaterally involved, in which case a prima facie right of ownership may be established by parol evidence from one qualified to speak. *Tucker* v. *Welsh,* 17 Mass. 160; 17 Cyc. 484. The wife might have testified to her ownership, since that was only collaterally involved, and her husband, living with her in occupation of the property, may equally testify to her ownership. Nor should the allowance of this question as to ownership, upon a collateral issue of this nature whose truth might easily have been contested and was not, and whose effect upon the real issues of the case must have been exceedingly limited, be treated as so material an error as to lead to a new trial.

For the purpose of disproving the claim that the defendants assaulted the plaintiff, the defendants offered

VOL. LXXXVI—18

in evidence the complaint, an amendment thereto, and a substituted complaint, as showing that in these several statements of her cause of action, extending through a period of nearly two years, the plaintiff did not allege that either defendant had assaulted her.

This evidence was excluded; it was clearly evidential. *Loomis* v. *Norman Printers Supply Co.*, 81 Conn. 343, 350, 71 Atl. 358; *Miles* v. *Strong*, 68 Conn. 273, 36 Atl. 55. The ruling of the court excluded it from the consideration of the jury. Had it not been for the court's ruling the defendants' request to charge, that "failure to make a claim seasonably is always to be construed against the person making the claim, and such failure is a matter which you should consider in determining whether or not the claim of the plaintiff that she was assaulted or beaten is true," would have been applicable to the situation and should have been given. *Nichols* v. *New Britain*, 77 Conn. 695, 698, 60 Atl. 655; *Hurd* v. *Hotchkiss*, 72 Conn. 472, 481, 45 Atl. 11.

We cannot say that the exclusion of this evidence was not harmful, nor can we say that it was immaterial, since we do not know what, if any, part of the verdict was founded upon the assault. The omission, for a long period of time, from repeated statements of an action for an eviction and conversion of goods, of the elements of an assault claimed to have occurred at the time of the eviction and conversion, unless explained in some satisfactory way, might reasonably have led to doubt of the good faith and seriousness of the assault, one or both. The rejection of this evidence was a harmful error. *Fuller* v. *Metropolitan Life Ins. Co.*, 70 Conn. 647, 677, 41 Atl. 4.

The fact that the parts of the pleadings offered were left in the file and went to the jury is of no consequence; the defendants were entitled to have them go to the jury as evidence in the case, together with such instruc-

tion as the admission of the evidence required for the guidance of the jury.

There is error and a new trial is ordered.

In this opinion the other judges concurred.