## No. 8897.

### McDONNELL v. SOLOMON.

ROOMING HOUSE—*Lien of Keeper.* Section 4013 of the Revised Statutes applies to hotels, boarding houses, rooming houses, and the like.

The evidence examined and held to warrant a judgment establishing the lien of a keeper of a rooming house upon the goods of the tenant.

Under Rev. Stat. sec. 3021 the goods of the wife are chargeable with the lien equally with those of the husband.

*Error to La Plata County Court, Hon. Richard McCloud, Judge.*

Messrs. PERKINS & MAIN, and Mr. L. M. PERKINS, for plaintiff in error.

Mr. JAMES A. PULLIAM, for defendant in error.

Chief Justice Hill delivered the opinion of the court:

THIS action in replevin was instituted in a justice's court The plaintiff in error (hereafter called the plaintiff), sought possession of two trunks containing wearing apparel, one hat box with hat, two cases with surgical instruments and medicines, and one box of books, which were held by the defendant for the payment of room rent, for which she claimed a lien thereon by authority of section 4013, Rev.

Stats., 1908. Upon appeal to the County Court where the trial was to the court, the findings and judgment sustained the lien.

It is claimed that the evidence is insufficient to sustain the judgment. *Scanlon v. LaCoste*, 59 Colo. 499, 149 Pac. 835, L. R. A. 1915 F, 664 Ann. Cas., 1917 A, 254, is relied on as sustaining this contention. The ruling there is to the effect that where the owner of an apartment house rents an apartment, though furnished, for housekeeping purposes, and which is occupied as a home, that he is not entitled to a lien under section 4013, *supra*. The facts here do not fit that case, but present a condition which places it upon the border line. The record discloses that the defendant was not the possessor of an apartment house, as that term is generally understood, but to the contrary was in possession of the second story of a business building, with business places below, and seven rooms and a bath above; that these rooms were furnished by defendant; that she had a sign "furnished rooms" displayed; that she had posted in each of the rooms occupied by the plaintiff and her family, the statutory notice required to take advantage of the hotel and boarding housekeepers' act, etc.; that prior to her occupancy it had been run by others as a rooming house, once known as The Trumble Rooming House, once as The Goodman Rooming House, and that defendant's predecessors, as well as defendant, had for a long time run the place as a rooming house, viz, rented furnished rooms by day, week or month; that the plaintiff's husband rented, and with her and their two children, occupied, what was called two front rooms which faced out on the street, and one side room, so-called; that one of these rooms was furnished with a folding bed, dresser and wash-stand, another with a couch, dresser, stove, stand-table, and wardrobe, and the other with a folding bed, wash-stand, small table, stove and cupboard; all had carpets, window curtains, blinds, etc., furnished by defendant. The plaintiff furnished no furniture, the defendant furnished the coal and kindling for the stoves, also the lights and tele-

phone service; that all used the common bath, etc., which was outside of these rooms; that the entrance to the bath room was from the main hall; that the defendant took care of the bath room; that the defendant gave to plaintiff and her husband keys to these rooms; that the plaintiff took care of them, for which they were given a reduction in rent, below the regular rate; that the defendant had a pass key to them, with which (she said), to go in them whenever she wished; that the defendant washed the curtains, and windows during the period they were occupied by plaintiff and family; that the defendant had the only key to what is termed the outside door, being the hall door, at the bottom of the stairs. The plaintiff testified that while there, she cooked, and they ate their meals in the rooms. The defendant testified that the plaintiff's husband, the doctor, took his meals at a restaurant. They were there from about December the 1st to March 29th, at an agreed rate of $30.00 per month, after March 29th they gave up one room, but continued the use of the other two until April 20th at $20.00 per month. When they applied for the rooms, the rate given them was a monthly rate. The plaintiff with their two children left without notice, some time before her husband; he, likewise, left without notice on April 20th, leaving the goods in controversy in the rooms. The defendant testified that she phoned him, asking if he intended to give up the rooms; that he said he would have to, he did not have the money, and that he said for her to hold the baggage for the rent. It is urged that this statement would not be binding as against the wife. We agree with this, but as the husband made the arrangements for the rooms for himself and family, it is a circumstance tending to show the relation existing between the parties at the time. It is agreed that there is $107.00 still due for rent. The plaintiff claims that the property involved is hers, and that her husband has no interest therein. So far as the lien is concerned this makes no difference. Section 3021, Rev. Stats. 1908, makes her property equally chargeable with that of the husband for the expenses of the

family. Section 4013, *supra,* says, "Any person who rents furnished or unfurnished rooms, shall have a lien upon the baggage and furniture of his or her patrons, boarders, guests or tenants, for such boarding, lodging or rent." It is conceded that this section does not apply to rooms in office buildings, rented for office purposes, or to apartment houses where apartments are rented for homes. It must likewise be conceded that it was intended to apply to the class of rooms included in hotels, taverns, boarding houses, rooming houses, etc. The dividing line is sometimes hard to ascertain. In *Mathews v. Livingston,* 86 Conn. 263, 85 Atl. 529, it is said:

"The relation * * * depends upon the contract of hiring, gathered from its terms and interpreted in the light of the surrounding circumstances, having in end the finding of the intention of the parties to the contract. * * * It is a mixed question of law and fact."

This conclusion appears to be supported by the weight of authority and when the facts above outlined are considered, we cannot subscribe to the contention that there is no competent testimony upon which the finding can be sustained, for which reason the judgment will be affirmed.

*Affirmed.*

Decision *en banc.*