No. 32,209

Marie Bates, *Appellee,* v. G. A. Stearns, *Appellant.*

(44 P. 2d 278)

Opinion filed May 4, 1935.

*Chas. G. Yankey, Harvey C. Osborne, John G. Sears, Jr.,* and *Verne M. Laing,* all of Wichita, for the appellant.

*R. E. Angle,* of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiff, Marie Bates, brought this action against G. A. Stearns, on whose farm a rodeo exhibition was being conducted, and she alleged that she attended the exhibition given there on October 7, 1932. She alleged that wild, untamed horses were exhibited there and that one of those horses with a rider thereon was turned loose on the premises. After getting out of the inclosure the horse went over two fences in front of the grandstand, each about five feet high, over some box seats and up one aisle of the grandstand, and in going through struck or kicked the plaintiff, injuring plaintiff's left leg between the knee and the ankle.

The plaintiff alleged that defendant was the owner and promoter of the exhibition and liable for any injuries suffered. The situation at the place where the exhibition was given is described as a half-mile race track in a circular form; that in the traveled part of the track in front of the grandstand there was first a fence all around the track about five feet high, made of steel posts and Page wire, heavy and strong, and then an open space of fifteen feet, then the boxes in front of the grandstand, seventeen feet wide, and then a second fence.

She alleged that after about an hour and a half a horse was let out of the pen or chute with a rider on him; that the horse came out bucking and kicking and plunging, and jumped the first fence, ran over the box seats, went over the second fence, which was about five feet high, of woven wire, and there dislodged the rider. The horse went up into the grandstand and struck plaintiff as he passed, bruising her leg, as stated. She remained some time in the show and afterwards walked to the car in which she went home.

Defendant answered that he was the owner of the farm, which was twelve miles north of Wichita, and he denied especially that he had any control or supervision over the horse which the plaintiff alleges caused her injury. He denied that he received the proceeds of the exhibition or that he in any way participated in the distribu-

tion of said money; defendant denied that he is in any way responsible for the plaintiff's injury, and that plaintiff failed to exercise any care incumbent upon her to avoid the injury, and that if she suffered any injury plaintiff proximately contributed to it by her carelessness and negligence.

While the defendant was described as the owner and promoter, it was shown that he had leased the ground as a race track to the Wichita Driving Club Association, and that he had no control whatever of the exhibition. The Wichita Driving Club put the improvements on the farm for the exhibition and then leased it to B. Davis of Wichita. The association was to receive a percentage of the receipts.

The testimony in the case makes it clear that Stearns was without responsibility for the accident. He had leased the property to another, and the fences and structures on the ground had been placed there by the Wichita Driving Club Association and he had no part in that, nor in the money received by admissions of spectators—which was fifty-five cents each.

An incident was stated on which a claim was made of responsibility for the accident. It is said that the show was opened by an announcement that Mr. Stearns was the owner of the farm and a promoter of the association, and is said by Mr. Bates, the husband of plaintiff, to have been introduced to the audience that night as the owner and promoter of the show and that he tipped his hat or bowed to the audience. Defendant demurred to plaintiff's evidence, which was overruled, and moved for judgment on the record and made a motion for a new trial, which motions were denied.

Defendant was the landlord, and the Wichita Driving Club Association was the tenant. It was given the lease and it built the improvements, including the fences, box seats and grandstand. A director of the association testified the organization was formed about February, 1930, and since that time he had attended all the exhibitions given there, and there was no building, grandstand nor improvements of any kind on the ground when it was leased, but that these were put there by the Wichita Driving Club Association. Defendant said he was acquainted with B. Davis. The club made a lease of the property to him to put on the rodeo, Davis to give a percentage of the receipts to the association. In his opinion, due precautions were taken for safety of patrons and people by the construction of the buildings and improvements. Stearns, the defend-

ant, testified that he was the owner of the farm near Wichita, that Davis and others had approached him for permission to put on a rodeo, but he told them he had no authority—that the track and grounds were already under lease to the Wichita Driving Club, and they would have to apply to them; that there was nothing said that night or announced that he was the promoter of the rodeo; that he owns the farm, nothing more, and has no control. He testified further that he was in the grandstand and naturally felt like helping anyone that had been hurt. He had sent a boy for bandages and iodine. The testimony of these witnesses was not denied except perhaps as to the announcement that he was the owner and promoter. The court gave an instruction to the jury as follows:

"If you find that the defendant was announced as the owner of the farm and promoter of the rodeo, that he heard the announcement and responded thereto by bowing to the audience and did not deny or in any other manner contradict the assertion that he was promoter, then he would be bound by such announcement that he was the promoter and in that instance would be held liable for any liability following. . . ."

That makes a liability rest on the tipping of his hat, the denial of which might not be heard by the person injured, and yet he would, under the court's instruction, be liable unless he could prove that he had made a sufficient denial and that it could be heard by the plaintiff or called to the plaintiff's attention. There was direct evidence that he was not the promoter and they did not have to resort to signs and symbols of consent. This instruction was not correct. The landlord had leased the property and given possession and control of it to the tenant. An action could have been maintained against him for interference if he had assumed control of the rodeo or interfered with possession in any respect. The holding of such exhibitions is quite common in the West and the plaintiff had attended other exhibitions of this character in which wild horses were used. This was an exceptional case, and the horse jumped over barriers that had previously stopped the wildest of horses. The owner of the ground had no right to interfere with the possession and he was not responsible on any account for the accident. No negligence was pleaded against him and he could not be held liable for a tip of the hat or a bow to the audience, if one was made, that he was the promoter of the rodeo. He may or may not have heard the announcement, if it was made, and the husband of the plaintiff, who gave testimony for her, did not know that the landlord heard

the announcement; he did not know who made it, and did not even see the man making announcements. There was no denial of the testimony of defendant's witnesses.

The defendant cites *Hart v. Washington Park Club,* 157 Ill. 9; *Hallyburton v. Fair Association,* 119 N. C. 526; *Swan v. Riverside Bathing Beach Co.,* 132 Kan. 61, 294 Pac. 902, and some other cases where accidents occurred, but where full possession had been given and the owner of the land was held not liable for the accident. As to the right and liability of tenants see 16 R. C. L. 731, sections 222, 223, *et seq.*

We have no occasion to consider contributory negligence. The defendant's motion for judgment on his demurrer to the plaintiff's evidence should have been sustained.

We decide only the question of the landlord's liability for the accident. Negligence was not proven and the defendant's demurrer to the evidence should have been sustained. The defendant's evidence of leasing the premises to the Wichita Driving Club Association, and surrendering control and possession of it to them, entitled him to judgment. He was not negligent towards the plaintiff.

The judgment is reversed with direction that the demurrers and motions be sustained.