Dear Susan M. Erlichman, Esquire
Your predecessor asked for our opinion whether a domestic employee who resides in the employer's residence may receive guests, including religious leaders, medical personnel, and lawyers, at that residence. The inquiry posed two questions:
 1. Does a live-in domestic employee have tenancy rights, including the right to invite and receive guests, if the employee is required to live at the employer's residence as a condition of employment and the employee is compensated in part by the employer's provision of room and board?
 2. Would the live-in employee's rights be affected if the residence is owned by a foreign diplomat or by a foreign government that employs a household employee to work for a diplomat? For the reasons explained in this opinion, we conclude:
 1. Whether a live-in domestic employee has tenancy rights will depend on the particular arrangement between the employer and employee — i.e., whether that arrangement gives the employee exclusive control over the premises occupied by the employee. A domestic employee who does not have tenancy rights would not have the right of a tenant to admit guests to the employer's home without the employer's assent.
 However, this does not mean that the employer may control an employee's right to associate with others. An employer who isolates an employee from outside contacts by threat of force or legal action will likely violate federal laws against peonage, involuntary servitude, and forced labor.
 2. Even when a live-in employee has tenancy rights, those rights may be difficult to enforce if the residence is occupied by a foreign diplomat or maintained by a foreign government for use by diplomats.
The Vienna Convention on Diplomatic Relations, a treaty that has the force of law, makes the private residence of a foreign diplomat "inviolable" — that is, it cannot be entered by the host country's authorities without the diplomat's permission. Moreover, diplomatic immunity would likely shield the diplomat from suit by the live-in employee, or anyone else, in federal or state court. However, the employee has the right to complain to the Justice Department, which can conduct an investigation and, if a violation is found, seek a waiver of diplomatic immunity. The worker can also seek relief from the State Department, which could mediate or negotiate with the diplomat or foreign government about the dispute.
 I Background
The letter requesting this opinion described the situation of a live-in household worker who had been subject to abuse, mainly because of the employer's control over the employee and the employee's isolation from outside contacts. The employee was apparently forced to work seven days a week and was restricted to the home except when accompanied by the employer's family. In addition, the employee was denied phone calls and kept in isolation from friends and visitors.
Some foreign household workers, who are admitted to the United States under State Department visa requirements that authorize the employee to work only in the employer's home, are particularly vulnerable to such abuse. See Human Rights Watch, Hidden in the Home: Abuse of Domestic Workers with Special Visas in the United States (June 2001), available atwww.hrw.org/reports/2001/usadom/usadom0501.pdf; see also Azmy, Unshackling the Thirteenth Amendment: Modern Slavery and a Reconstructed Civil Rights Agenda, 71 Fordham L.Rev. 981, 987-95 (2002); Murphy, Modern Day Slavery: The Trafficking of Women to the United States, 9 Buff. Women's L.J. 11, 13-14 (2001).
 II Landlord-Tenant Relationship
Maryland courts have drawn a distinction between a tenant "entitled to exclusive possession and control" of the rooms occupied and a "mere lodger." See Green v. Shoemaker Co., 111 Md. 69, 75, 73 A. 688
(1909). In a landlord-tenant relationship, there is an implied covenant of quiet enjoyment that prohibits the landlord from interfering with the tenant's lawful use of the premises. See Annotated Code of Maryland, Real Property Article ("RP"), § 2-115; Bocchini v. Gorn Management Co.,69 Md. App. 1, 6, 515 A.2d 1179 (1986). Additionally, a tenant has the general right to invite guests to enter the property; and the landlord, absent an agreement to the contrary, has no right to object. See, e.g., Gordon County Broadcasting Co. v. Chitwood, 87 S.E.2d 78, 79 (Ga. 1955) (without any lease limitations, a tenant has the right to invite guests on the leased premises); Bates v. Stearns, 44 P.2d 278, 279 (Kan. 1935); Konick v. Champneys, 183 P. 75, 77 (Wash. 1919).
While a landlord-tenant relationship may be established pursuant to a contract or lease, a tenancy may also be implied by operation of law based on the conduct of the parties. Hyatt v. Romero, 190 Md. 500,58 A.2d 899 (1948); Kinsey v. Minnick, 43 Md. 112, 116 (1875). Whether an occupancy creates a tenancy is a question of fact to be determined under the circumstances of each case.
In determining whether an occupant is a tenant, courts have looked to a number of factors, but all are ways of assessing whether the occupant has exclusive possession. For example, a person who rents a room, provides furnishings, maintains the room, and excludes others, including the property owner, is likely to be found to be a tenant. Mathews v. Livingston, 85 A. 529 (Conn. 1912). On the other hand, a person who occupies a room to which the owner has free access will ordinarily be found to be a lodger and not a tenant. Tamanian v. Gabbard, 55 A.2d 513
(D.C. 1947), Johnson v. Kolibas, 182 A.2d 157 (N.J.App. 1962), or for other reasons, Taylor v. Dean, 78 A.2d 382 (D.C.App. 1951).
Among the other factors that courts have considered are whether the occupants share kitchen and bath facilities, and whether furnishings, linens, or maid services are provided. State Farm Fire Casualty Co. v. Quirt, 28 Md. App. 603, 611, 346 A.2d 497 (1975); Johnson v. Kolibas, 182 A.2d 157 (N.J.Super. 1962).
This Office has applied these principles in two opinions, which concluded that a statute governing security deposits did not apply to a college dormitory and a group home for the elderly, because those facilities did not involve landlord-tenant relationships. See 78 Opinions of the Attorney General 249 (1993) (resident of group home for elderly did not select room and did not have exclusive possession of any part of facility); 60 Opinions of the Attorney General 425 (1975) (students in college dormitories were assigned rooms, did not have right to select fellow occupants, were furnished maid service and trash removal, and did not enjoy exclusive possession of premises).
Courts have often held that an employee who occupies premises belonging to an employer is not a tenant when the occupancy is incidental to, or necessary for, performance of the employment. See 49 Am. Jur.2d Landlord and Tenant § 9. This rule has been applied to situations involving domestic employees. See Dobson Factors, Inc. v. Dattory, 364 N.Y.S.2d 723,724 (1975) (occupancy incidental to employment as building superintendent does not establish landlord-tenant relationship); Mackenzie v. Minis,63 S.E. 900 (Ga. 1909) (house provided to gardener near employer's home as part of compensation did not create tenancy). In such situations, the live-in domestic employee does not have the right of a tenant to invite others into the employer's home without the employer's assent. See Tipsword v. Potter, 174 P. 133 (Ida. 1918); Tucker v. Bert, 115 N.W. 722
(Mich. 1908). Thus, a household worker who resides in the employer's home does not necessarily have the rights of a tenant.[1]
 III Employee Rights
Even if a live-in domestic employee does not have tenancy rights and the employer controls admission to the premises, this does not mean that the employer has absolute control over the activities of the employee.
A domestic employee has the legal right to associate with anyone, including religious leaders, providers of government services, lawyers, and the press. See White v. Keller, 438 F. Supp. 110, 116 (D.Md. 1977) (right of physical association stems from the physical liberty of every individual), aff'd, 588 F.2d 913 (4th Cir. 1978). An employer who forces an employee, by threats of force or legal coercion, to work seven days a week, to remain in the home, and to avoid all outside contacts may be subject to prosecution under federal statutes prohibiting peonage, involuntary servitude, and forced labor. 18 U.S.C. § 1581 (peonage),1583 (enticement into slavery), 1584 (holding in involuntary servitude), 1589 (forced labor), 1590 (trafficking), 1592 (confiscation or possession of immigration documents in connection with violation), 1594 (attempted violations); see also United States v. Kozminski, 487 U.S. 931 (1988).
 IV Diplomatic Immunity
There are certain impediments to the enforcement of rights of a live — in domestic employee if the employer is a foreign diplomat. The Vienna Convention on Diplomatic Relations, 23 U.S.T. 3229 (April 18, 1961) ("Vienna Convention"), establishes certain protections and obligations for a diplomat who is stationed outside the diplomat's own country.
The Vienna Convention is self-executing and is binding on federal and state courts. See Trans World Airlines, Inc. v. Franklin Mint Corp.,466 U.S. 243, 252 (1984) (self-executing treaty has the force of law). See also Diplomatic Relations Act of 1978, 22 U.S.C. § 251-59 (codifies and extends the Vienna Convention's coverage to non-party states).
Under the Vienna Convention, the private residence of a diplomat is "inviolable" — i.e., entry under the authority of the host state is restricted without the diplomat's permission. Vienna Convention, Articles 22, 30. This restriction applies if the residence is occupied by the diplomat, whether or not it is owned by the diplomat or the foreign government. See 767 Third Ave. Associates v. Permanent Mission,988 F.2d 295, 300-1 (2d Cir. 1993) (Vienna Convention codified principles of international law, including the principle of "inviolability" of the government or private residence of a diplomat that precludes nonconsensual entry).
The Vienna Convention also confers on foreign diplomats absolute immunity from criminal prosecution and, subject to three exceptions not relevant here, a similar immunity from civil suit. Id., Articles 31 and 37.
See Tabion v. Mufti, 73 F.3d 535 (4th Cir. 1996) (Vienna Convention barred suit by live-in domestic employee against a diplomat and his wife for violations of the Fair Labor Standards Act, breach of contract, false imprisonment, and racial discrimination). Recognition of diplomatic immunity reflects a policy choice to enhance relations among nations and to protect American diplomats from criminal and civil prosecution in other countries. Tabion, 73 F.3d at 539. However, it is not an "unconstrained license" to violate contracts and United States laws. Id. Under the Vienna Convention, foreign diplomats are under a duty to respect the local law of the host country. Vienna Convention, Article 41. A host country may seek a waiver of diplomatic immunity under Article 32 of the Vienna Convention or may pursue extra-judicial means of enforcing its laws.
Thus, although diplomatic immunity would prevent a domestic employee from directly obtaining judicial enforcement of federal and state law against a diplomat, the employee or others could complain to the Justice Department and the State Department. The Justice Department could investigate the situation and, if it appeared that federal statutes proscribing involuntary servitude or other federal laws had been violated, seek a waiver of diplomatic immunity. Alternatively, the State Department could investigate, mediate, or bring any complaint involving a diplomat to the attention of the foreign embassy for voluntary compliance. In extreme cases, a diplomat could be expelled from the United States under Article 9(1) of the Vienna Convention. See Tabion v. Mufti, 877 F. Supp. 285, 293 (E.D.Va. 1995) (describing informal and formal remedies available to State Department), aff'd, 73 F.3d 535 (4th Cir. 1996).
 IV Conclusion
In summary, it is our opinion that:
 1. Whether a live-in domestic employee has tenancy rights will depend on the particular arrangement between the employer and employee — i.e., whether that arrangement gives the employee exclusive control over the premises occupied by the employee. A domestic employee who does not have tenancy rights would not have the right of a tenant to admit guests to the employer's home without the employer's assent.
 However, this does not mean that the employer may control an employee's right to associate with others. An employer who isolates an employee from outside contacts by threat of force or legal action will likely violate federal laws against peonage, involuntary servitude, and forced labor.
 2. Even when a live-in employee has tenancy rights, those rights may be difficult to enforce if the residence is occupied by a foreign diplomat or maintained by a foreign government for use by diplomats.
The Vienna Convention on Diplomatic Relations, a treaty that has the force of law, makes the private residence of a foreign diplomat "inviolable" — that is, it cannot be entered by the host country's authorities without the diplomat's permission. Moreover, diplomatic immunity would likely shield the diplomat from suit by the live-in employee, or anyone else, in federal or state court. However, the employee has the right to complain to the Justice Department, which can conduct an investigation and, if a violation is found, seek a waiver of diplomatic immunity. The worker can also seek relief from the State Department, which could mediate or negotiate with the diplomat or foreign government about the dispute.
 J. Joseph Curran, Jr. Attorney General
 Craig A. Nielsen Assistant Attorney General
 Robert N. McDonald Chief Counsel Opinions and Advice
[1] There are circumstances under which an employee without tenancy rights may have a right to receive visitors whether or not the employer assents. In a 1982 opinion, Attorney General Sachs concluded that the employer-owner of a migrant labor camp cannot deny a resident farm worker the right to receive guests and to be visited by clergy, medical, or other service personnel, lawyers, and the press. 67 Opinions of the Attorney General 64 (1982). That opinion was not based on whether migrant workers had tenancy rights, but adopted the reasoning of a New Jersey Supreme Court opinion holding that "as a matter of property law, mere ownership of a labor camp does not carry with it the right to cut off the fundamental rights of those who live in the camp." Id. at 68. The opinion also relied on an exception in the Maryland criminal trespass statutes that allows migrant workers to "receiv[e] any person who seeks to provide a lawful service." See Annotated Code of Maryland, Criminal Law Article, § 6-406(d). The opinion noted that courts in other states had concluded that there is a right of access to migrant workers on a variety of other theories, including federal and state statutes establishing programs to benefit such workers and the constitutional rights of freedom of speech and association. Id. at 66 n. 4. A subsequent opinion of the New York Attorney General concluded that migrant farm workers had tenancy rights under New York law. 1991 N.Y. Op. Atty. Gen. 23, 1991 WL537273. *Page 10