**TAMAMIAN et al. v. GABBARD.**

**No. 553.**

Municipal Court of Appeals for the
District of Columbia.

Nov. 12, 1947.

H. Max Ammerman, of Washington, D. C. (Louis Ottenberg, of Washington, D.C., on the brief), for appellants.

Kelley E. Griffith, of Washington, D.C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

HOOD, Associate Judge.

This is an appeal from a judgment in favor of a plaintiff who alleged in his complaint that the defendants had maliciously, wrongfully and unlawfully, evicted him from a room rented by him from them.

It was established at the trial that plaintiff had been a roomer in a rooming house operated by defendants; that on February 9, 1946, defendants padlocked the door to plaintiff's room and refused him access to it, claiming that he was in arrears for two weeks' rent. Plaintiff claimed he had paid the rent for one of the weeks in dispute and had tendered the rent for the other week and that defendants had refused to accept it. Defendants denied both the payment and tender.

Defendants requested the court to instruct the jury that defendants had the right to lock out plaintiff if he owed rent at the time he was locked out. This instruction was denied, and the court charged the jury that regardless of whether or not plaintiff owed rent he could not be evicted without some prior reasonable notice and the institution of court proceedings, and

514

that if the jury found that no notice had been given plaintiff and no court proceedings for possession instituted against him, the jury should find in favor of plaintiff for such damages as they found had been sustained by him. The jury awarded $1 nominal damages and $200 punitive damages.

Defendants base their appeal on the following contention: "No notice to quit is necessary nor is the institution of court proceedings necessary where there is no existing relationship of landlord and tenant and the roomer is delinquent in the payment of his room rent." Plaintiff contends that by reason of the District of Columbia Emergency Rent Act[1] he had the status of a tenant at sufferance and consequently was entitled to a thirty day notice to quit.

■■ The agreed statement on appeal recites that plaintiff was a roomer in a rooming house operated by defendants, that defendants owned the furniture and furnishings in the room, had access to the room, supplied linens, towels, etc., and rendered daily maid service, and that plaintiff paid a weekly rental of $7.50. The question of whether the occupant of premises has the status of a roomer or a tenant is sometimes a close one.[2] That the occupancy relates to one room only is not the decisive factor, for a tenancy may exist with respect to a single room as well as to many rooms. However, on the agreed statement here it seems quite plain that plaintiff was a roomer, unless, as he contends, he is entitled to the status of a tenant by reason of the Rent Act.

■■ The Rent Act expressly states that the term "housing accommodations" includes "rooming- or boarding-house accommodations"[3] and includes in the definition of tenant "person entitled to the use or occupancy of any housing accommodations."[4] Furthermore, the Act defines "rooming house" and gives the Administrator power to require a license as a condition to the renting of housing accommodations in a rooming house.[5] All this establishes beyond question that a roomer is entitled to the protection of the Rent Act. This protection lies largely in the regulation of rents, the maintenance of service standards, and the prohibition against dispossession of a tenant "so long as the tenant continues to pay the rent to which the landlord is entitled,"[6] with certain specified exceptions. Therefore, although plaintiff was a "tenant" within the meaning of the Rent Act and entitled to its full protection, there is no prohibition in the Act against dispossessing a tenant who does not pay his rent.

Plaintiff argues here that the jury must have concluded that he owed no rent at the time he was locked out because he had previously paid in excess of the rent ceiling a sum far larger than that in dispute. This argument is based on two orders of the Rent Administrator of July 17 and July 24, 1944, establishing daily, weekly and monthly rates for plaintiff's room. It is not at all clear from the record that plaintiff made overpayments, or, if so, how much. Plaintiff asserts he overpaid $90 in a year's time, but obviously this figure cannot be accepted since plaintiff occupied the room less than three months under defendants' operation of the house. Aside from the foregoing, it is plain that the court did not submit to the jury the disputed question of arrearage. The jury were instructed to disregard the issue of whether or not plaintiff owed rent. We must accept the case as one in which the jury could have found plaintiff delinquent in his rent but were foreclosed by the court's instructions from considering that issue.

■ As we have seen, plaintiff was a tenant within the meaning of the Rent Act but was subject to being dispossessed if he failed to pay his rent. Was he entitled to notice to quit? Plaintiff argues that because of the Rent Act he is a tenant and therefore entitled to notice. However, being a tenant for the purpose of the Rent Act does not necessarily mean that one is a tenant for all purposes. The Rent Act makes no provision for any notice to quit.

[1] Code 1940, Supp. V, §§ 45—1601 to 1611.

[2] Carroll v. Cooney, 116 Conn. 112, 163 A. 599; Marden v. Radford, 229 Mo.App. 789, 84 S.W.2d 947.

[3] Code 1940, Supp. V, § 45—1611 (a).

[4] Code 1940, Supp. V, § 45—1611 (f).

[5] Code 1940, Supp. V, § 45—1607 (b).

[6] Code 1940, Supp. V, § 45—1605 (b).

Requirement of notice to quit is governed by our general law relating to landlord and tenant. It requires a thirty day notice to quit in order to terminate certain estates, i.e., a tenancy from month to month,[7] a tenancy at will,[8] and a tenancy at sufferance.[9] But, within the meaning of our general law, plaintiff under the facts of this case was a roomer and not a tenant. The distinction between the two relationships was pointed out by us in Beall v. Everson, D.C.Mun.App., 34 A.2d 41, where we said: "A tenant is a purchaser of an estate, entitled to exclusive legal possession; but a roomer has merely a right to the use of the premises." This distinction is a substantial one,[10] and the Rent Act, though considering a roomer as a tenant for its purposes, did not remove the distinction and did not create the relationship of landlord and tenant in situations where it did not exist under the general law. Thus, in Beall v. Everson, supra, we held that taking roomers by a tenant did not violate a covenant against subletting. Therefore, the code sections requiring notice for termination of a tenancy have no application to a roomer.

■ Although plaintiff contends he was a tenant and entitled to a thirty day notice, it is observed that the trial court did not rule either that plaintiff was a tenant or was entitled to a thirty day notice. The court ruled that plaintiff was entitled to a reasonable notice. Is a roomer entitled to notice before he can be put out for nonpayment of rent? Our attention has been called to no authority for so holding. The few authorities we have found indicate to the contrary.[11]

It is suggested that by analogy, since a tenant is entitled to notice, a roomer is also entitled to some notice. But the notice to the tenant is required by statute, and we have no such statute relating to roomers. Furthermore, the notice to the tenant is re-quired in order to terminate the tenant's estate. The roomer has no estate to be terminated. A roomer's right to use of the premises depends on his contract with respect thereto, and what notice, if any, is required to terminate his right to such use, in the absence of fault on his part, depends on the particular circumstances of the case. But here there is no claim that the roomer by reason of any contractual provision or agreement was entitled to notice in the event of his default in payment of rent. Even the tenant may waive his statutory notice[12] and practically all written leases and other rental agreements provide for waiver of notice on nonpayment of rent.

We cannot disregard the fundamental distinction between tenant and roomer. To do so would involve many complications. Along with the tenant's right to a notice to quit is the duty on him to give notice if he desires to terminate the tenancy. If we hold by analogy that a roomer is entitled to notice, then by the same analogy we would have to impose on all roomers a corresponding duty to give notice. If we disregard the distinction then we must hold, contrary to Beall v. Everson, supra, that the taking of a roomer is a violation of a covenant against subletting. Furthermore, unless the distinction is maintained, a roomer may be subjected to the rule that upon a demise there is no implied warranty that the premises are fit for habitation, that the tenant takes the risk of safe occupancy, and takes the premises as he finds them "under the gracious protection of caveat emptor."[13] A disregard of the distinction may easily bring more burdens than benefits to the roomer.

Our conclusion is that the trial court was in error in ruling that regardless of whether or not plaintiff owed rent he could not be evicted without notice.

■ Was the trial court correct in ruling that plaintiff could not be evicted without

---

[7] Code 1940, § 45—902.

[8] Code 1940, § 45—903.

[9] Code 1940, § 45—904.

[10] Mathews v. Livingston, 86 Conn. 263, 85 A. 529, Ann.Cas.1914A, 195.

[11] Dewar v. Minneapolis Lodge, 155 Minn. 98, 192 N.W. 358, 32 A.L.R. 1012; Roberts v. Casey, 36 Cal.App.Supp.2d 767,

93 P.2d 654; Messerly v. Mercer, 45 Mo. App. 327.

[12] Code 1940, § 45—908.

[13] Hariston v. Washington Housing Corporation, D.C.Mun.App., 45 A.2d 287, 288, and cases there cited. See Coggins v. Gregorio, 10 Cir., 97 F.2d 948, where a tenant sought to escape the rule by asserting he was a mere lodger.

court proceedings for possession instituted against him? By this ruling we understand the trial court to hold that defendants should have instituted summary proceedings for possession under section 11—735 of the 1940 Code. This section provides a summary procedure for recovery of possession of real property under certain prescribed conditions. The first objection to proceeding against a roomer under that section is that, as already pointed out, a roomer does not have legal possession, and therefore a judgment cannot be given against him for restitution of possession. But if we assume that a roomer has sufficient actual possession to support a judgment against him for possession, the action against him must come within one of the definitely limited classes of cases specified by the statute.[14] Leaving aside cases arising after sale under a deed of trust or foreclosure of mortgage, which obviously have no application here, the classes of cases specified by Code Section 11—735 for use in summary proceedings for possession are:

"Whenever any person shall forcibly enter and detain any real property, or shall unlawfully, but without force, enter and unlawfully and forcibly detain the same; or whenever any tenant shall unlawfully detain possession of the property leased to him, after his tenancy therein has expired; * * *."

Plainly, in the ordinary case of a roomer there is no forcible entry and detainer; nor is there unlawful entry, without force, and a forcible detainer. This leaves only the case of unlawful detention by a tenant after expiration of his tenancy. As we have already seen, however, a roomer is not a tenant and has no tenancy. We, therefore, fail to see how an action under this section could be sustained against a roomer, and as this is our only statute relating to summary possession, we conclude that the trial court was in error in instructing the jury that it was necessary to institute court proceedings against plaintiff for possession of the room. In some jurisdictions the forcible entry and detainer statute is so broadly worded as to include an action against a roomer[15] but our statute contains no such broad provisions. Perhaps it should, but if so that is a matter for legislative action.

Our decision is necessarily based on the ground that there was evidence from which the jury could have found that the roomer was delinquent in rent, but we are not to be understood as holding that the evidence compelled such a finding. If on a new trial the jury should find that the roomer was not in arrears, then his eviction was unlawful and he would be entitled to his damages.

Reversed with instructions to award a new trial.

---

[14] Thurston v. Anderson, D.C.Mun.App., 40 A.2d 342.

[15] See Roberts v. Casey, 36 Cal.App. Supp.2d 767, 93 P.2d 654.