Harry SNITMAN, Appellant,

v.

Reuben GOODMAN, Harold Smith, R. Smith, and Colonial Parking, Inc., a corporation, Appellees.

No. 1690.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 27, 1955.

Decided Nov. 17, 1955.

1. Downs v. Bankhead, 44 App.D.C. 101; § 240, p. 192.

Restatement, Agency, § 146; 2 Am.Jur.

Herman Miller, Washington, D. C., with whom Ford E. Young, Jr., and Josiah Lyman, Washington, D. C., were on the brief, for appellant.

Thomas S. Jackson, Washington, D. C., with whom Louis M. Denit, Martin R. Fain, Richard A. Bishop and Alfred S. Fried, Washington, D. C., were on the brief, for appellees Reuben Goodman, Harold Smith and R. Smith.

Henry F. Lerch, Washington, D. C., with whom Wilton H. Wallace, Washington, D. C., was on the brief, for appellee Colonial Parking, Inc.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

A former tenant (hereafter called the tenant) of a parking lot brought this action to recover possession thereof from his former landlord (hereafter called the landlord) and those holding under him. The trial court directed a verdict against the tenant and he has appealed.

The tenant went into possession in 1947 and continued in possession until 1955. On February 28, 1955, the landlord notified the tenant to vacate on May 31, 1955. The tenant did not comply with the notice and shortly after midnight of May 31, while the premises were unoccupied, the landlord entered thereon, took possession and thereafter relet the premises to others.

We first consider the tenant's claim that the notice to quit was ineffectual to terminate his tenancy. Although he had no lease in writing, and though our law requires a lease for a greater term than one year to be in writing,[1] the tenant claims an "equitable lease," the term of which was to run until the landlord desired to erect a building on

[1] Code 1951, § 12-301.

the lot. This claim is based on his testimony that early in 1949 the landlord told him that a building would eventually be erected on the lot, but that construction would not begin for a long time and that he could remain in possession until construction began, and that in reliance upon this promise of the landlord he expended approximately $1,000 in improving the lot. In support of his position tenant relies upon Kresge v. Crowley, 47 App.D.C. 13, where the court upheld specific performance of an oral agreement to lease property for a term of years, relying upon the holding in Williams v. Morris, 95 U.S. 444, 457, 24 L.Ed. 360, that "courts of equity hold that the clear proof of the contract and of the acts of part performance will take the case out of the operation of the statute, if the acts of part performance were clearly such as to show that they are properly referable to the parol agreement."

■ The Kresge case is clearly distinguishable from the present one. In the Kresge case the court carefully pointed out that "the terms of the contract are susceptible of clear proof." Here the terms of the claimed agreement are not so susceptible. The term of the claimed lease was indefinite, being, according to the tenant's brief, "until he, the landlord, was ready to build." Would such agreement, if it existed, prevent the landlord from selling the lot? Also there was nothing definite concerning the rent to be paid under the claimed agreement. When the tenant entered into possession in 1947 he paid $200 a month. In 1948 the rent was increased to $280 and again to $340. In 1949 it was increased to $350 and in 1950 it was increased to $400. In 1954 the parties executed a written lease for three years at $600 a month, but after its execution the tenant told the landlord that the rent was too high, asked him to reduce it to $500 for the first year "and next year I will be happy to pay you six hundred."

The written lease was then torn up and the tenant resumed paying $400 a month. It is clear that throughout the tenant's occupancy, both before and after the landlord's alleged promise he could remain in possession until construction of a building commenced, the tenant recognized the right of the landlord to demand a higher rental. Indeed the tenant never claimed that the promise of the landlord that he could remain in possession included a promise that he could remain there at a fixed rental. And the tenant does not claim that he promised to remain in possession at whatever rental the landlord might demand. Thus at the most the tenant's claim is that the landlord promised that the tenant could remain in possession at such rental as the landlord might from time to time fix and to which the tenant might agree. An agreement to lease at a rental subject to change at the will of the landlord, even if such an agreement were in writing, would create nothing more than a monthly tenancy or a tenancy at will.[2] Either such tenancy under our law is terminable by a thirty days' notice. We think the trial court correctly ruled that the notice to quit terminated the tenancy.

The other contention of the tenant is that even if his tenancy was rightfully terminated, the landlord could lawfully regain possession only through court action and that the landlord's re-entry without the aid of court process was illegal.

Since 1864 there has existed in this jurisdiction a statutory method by which a landlord may in a summary proceeding obtain possession of premises when the tenant's right of possession has ceased by expiration of his lease or by notice to quit. See Willis v. Eastern Trust & Banking Co., 169 U.S. 295, 18 S.Ct. 347, 42 L.Ed. 752. The present statute, as amended June 18, 1953, is set out in the margin.[3] Our question is whether this statute abolished the common law right

2. Cf. Delashmutt v. Thomas, 45 Md. 140; Anderson v. Whipple, 71 Idaho 112, 227 P.2d 351; Sage v. Shaul, 159 Neb. 543, 67 N.W.2d 921.

3. "Whenever any person shall detain possession of real property without right, or after his right to possession shall have

ceased, it shall be lawful for the municipal court, on complaint under oath verified by the person aggrieved by such detention or by his agent or attorney having knowledge of the facts, to issue a summons to the party complained of to appear and show cause why judgment should

of a landlord, when the tenant's right to possession has ceased, to enter upon the premises, and take possession thereof without the use of legal process.

In some jurisdictions it is held that the statutory remedy is exclusive and that a tenant may be dispossessed only by resort to the statutory remedy. Lambert v. Sine, Utah, 256 P.2d 241. See also Eichhorn v. De La Cantera, 117 Cal.App.2d 50, 255 P.2d 70; Woodward v. Blanchett, 36 Wash.2d 27, 216 P.2d 228. In other jurisdictions it is held that the remedy afforded by the statute does not deprive the landlord of his common law right of entry. Shorter v. Shelton, 183 Va. 819, 33 S.E.2d 643. See also Maddran v. Mullendore, 206 Md. 291, 111 A.2d 608; Gower v. Waters, 125 Me. 223, 132 A. 550, 45 A.L.R. 309.[4] The question appears never to have arisen in this jurisdiction until recently. In Burford v. Krause, 1950, 89 F.Supp. 818, 819, 820, Judge Kirkland of the United States District Court for the District of Columbia ruled:

"At common law the landlord could use any force necessary to expel the tenant holding over after expiration of a lease, but this has been qualified to prevent physical violence, force and breach of the peace. The statute in force in the District of Columbia is declaratory of the development of the common law rule, but it allows an independent method of recovery of possession rather than completely abolishing the common law right of using necessary force or at least effecting a peaceful re-entry. If there is no more force used than is implied in every trespass, with nothing to excite fear of personal violence, a case is not within the statute, and therefore the forcing open

of the outer door in a peaceable manner is not of itself sufficient to constitute a forcible entry.

\*   \*   \*   \*   \*   \*

"The presence of the local forcible entry and detainer statutes does not supplant the common law right of self help in peaceably entering into premises on which a lease has expired where such entry is accomplished without breach of the peace. They merely afford additional means to which the parties may resort and under some circumstances may prove more orderly and less costly than the method employed in the case herein."

In arriving at his decision Judge Kirkland relied on cases in our neighboring states of Maryland and Virginia. We think his conclusion was sound. In Lindner v. District of Columbia, D.C.Mun.App., 32 A. 2d 540, 543, we said that "unless so declared in express terms or by necessary implication, a statutory remedy is merely cumulative and does not abolish an existing common law remedy." There is no express provision in the statute under consideration which abolishes the landlord's common law right and we see no necessary implication to that effect. The statute has been amended from time to time; but Congress has not seen fit to declare that the remedy afforded is exclusive.

We are strengthened in our conclusion by consideration of our statute which makes certain entries and detainers criminal offenses.[5] The statute forbids (1) forcible entry and (2) *unlawful* detention by force although entry was without force. It appears to us that this statute recognizes that one who is *lawfully* entitled to possession

not be given against him for the restitution of possession." Code 1951, Supp. III, § 11–735.

4. Cases dealing with various phases of the question may be found in the annotation, "Right of landlord to dispossess tenant without legal process." 45 A.L.R. 313, 49 A.L.R. 517, 60 A.L.R. 280.

5. "Whoever shall forcibly enter upon any premises, or, having entered without force, shall unlawfully detain the same by force against any person previously in the peaceable possession of the same and claiming right thereto, shall be punished by imprisonment for not more than one year or a fine of not more than one hundred dollars, or both." Code 1951, § 22–3101.

has a right of entry if he can make such entry without the use of force. In this respect our statute is quite different from some state statutes. For example, see the statute of the State of Washington considered in Denee v. Ankeny, 246 U.S. 208, 38 S.Ct. 226, 62 L.Ed. 669.

On the whole case our conclusion is that the tenancy was effectively terminated by notice, that the entry of the landlord was without force,[6] and the tenant was without right to regain possession.

Affirmed.

6.   Thurston v. Anderson, D.C.Mun.App., 40 A.2d 342.