Michael HARKINS, Jr., Appellant,

v.

WIN CORPORATION, Appellee.

No. 00–CV–402.

District of Columbia Court of Appeals.

Argued March 21, 2001.

Decided April 26, 2001.

Eric M. Rome, Washington, DC, for appellant.

Lois R. Goodman and David J. Ontell, Washington, DC, for appellee.

Before WASHINGTON, Associate Judge, and PRYOR and BELSON, Senior Judges.

PRYOR, Senior Judge:

Michael Harkins, Jr., appellant, appeals from the trial court's grant of summary judgment in favor of WIN Corp., appellee in Harkins's suit for wrongful eviction. The trial court found that appellant was a roomer or lodger, as opposed to a tenant, and concluded that self-help "was a permissible method of eviction." Appellant contends that the exclusive legislative remedy required for a landlord to regain possession from a tenant also must be used to evict a roomer. Being unpersuaded by this contention, we affirm the judgment of the trial court.

## I.

The facts of this case are undisputed. WIN Corp. operated the Allen–Lee Hotel in the District of Columbia. It had obtained both a valid license and a Certificate of Occupancy to operate a rooming house. Appellant was among the occupants of the hotel. Appellant became an occupant of a room in the hotel in September 1994 when he agreed, by signing a hotel registration card, to a weekly occupancy charge of $85 (plus tax and expenses). WIN Corp. provided linens, maid service, as well as furniture for the room during Harkins's stay. By April 1995, appellant was in arrears with respect to his weekly payments, and the manager of the hotel informed him that he would be evicted if he did not pay the arrearage due on his account. Harkins, however, continued to be delinquent in his payments. Appel-

lee did not file a complaint in the Landlord and Tenant Branch of the Superior Court seeking repossession of the room for nonpayment of rent. Rather, on May 3, 1995, appellee changed the locks for Harkins's room, thereby effectively locking him out of the premises.

Harkins subsequently filed a complaint against WIN Corp. alleging, *inter alia,* wrongful eviction.[1] Both parties then moved for summary judgment. In deciding the cross-motions, the trial court found that Harkins was a roomer, not a tenant, since he did not have exclusive possession of the room[2] and was not a tenant under the Rental Housing Act of 1985 ("Housing Act").[3] The trial judge concluded that the common law remedy of self-help to evict a roomer was still permissible, though no longer available to evict a tenant. Accordingly, the trial court granted summary judgment for WIN Corp. This appeal followed.

## II.

In his brief, Harkins states that "the straightforward, but not simple question" for this court is "whether the operator of a rooming house may utilize self-help to evict a roomer." Relying primarily on our holding in *Mendes v. Johnson,* 389 A.2d 781, 786–87 (D.C.1978) (en banc), and his reading of the present version of the District's eviction statute, D.C.Code § 16–1501 (1997), appellant contends that a judicial possessory action is the sole remedy for matters related to repossession of real property, as here.

D.C.Code § 16–1501 presently provides:
When a person detains possession of real property without right, or after his right to possession has ceased, the Superior Court of the District of Columbia, on complaint under oath verified by the person aggrieved by the detention, or by his agent or attorney having knowledge of the facts, may issue a summons in English and Spanish to the party complained of to appear and show cause why judgment should not be given against him for the restitution of possession.
Before 1953, D.C.Code § 11–735 (1940), the predecessor to the modern statutory summary possessory provision, was unavailable in situations other than the unlawful entry and detainer or unlawful detention of property by a tenant. *See Tamamian, supra* note 2, 55 A.2d at 516; *see also Davis v. Francis Scott Key Apartments,* 140 A.2d 188, 190 (D.C. 1958). Then in 1953, section 11–735 was amended, replacing the forcible entry and detainer provisions with a general remedy for any unlawful detention of property. *See Mendes, supra,* 389 A.2d at 786 n. 14. Section 11–735 gave rise to section 16–1501, which is substantially the same today as the 1973 version at issue in *Mendes, supra,* 389 A.2d at 783 n. 5. The one difference is that now the required summons must be in English and Spanish. Appellant urges that the statute, in its present form, referring to "a *person* [who] detains possession of real property without right," when read along with our decision in *Mendes,* should include all "persons" and not just tenants.

### A.

■ Commentators have long surveyed the question surrounding the eviction of

---

1. Harkins also asserted a claim for conversion for the personal property left in his room, which the trial court also dismissed upon WIN Corp.'s motion for summary judgment. That ruling is not challenged on appeal.

2. *See Tamamian v. Gabbard,* 55 A.2d 513, 514–15 (D.C.1947); *Beall v. Everson,* 34 A.2d 41, 41–42 (D.C.1943).

3. D.C.Code §§ 45–2501 to –2594 (1996 & Supp.2000).

roomers or lodgers and tenants. *See* 2 RICHARD R. POWELL & PATRICK J. ROHAN, POWELL ON REAL PROPERTY § 16.02[3][ii], at 16–28 to 16–30 (Michael A. Wolf ed.2000). As one leading commentator suggests, however, the distinction between a roomer and a tenant can be elusive. *See id.* at 16–28. At one end of the spectrum is the transient one-night roomer; at the other end is the long-term tenant with a written lease. "The central conceptual distinction [between these two ends] is usually phrased in terms of whether the occupant has or lacks a right of possession or exclusive control...." *Id.* at 16–28 to 16–29; *see also Beall, supra* note 2, 34 A.2d at 41 (" 'The principal distinction between the two relation[ships] is that the tenant acquires an interest in the real estate and has the exclusive possession of the leased premises, while the lodger acquires no estate and has merely the use without the actual or exclusive possession.' " (quoting *Coggins v. Gregorio,* 97 F.2d 948, 950 (10th Cir.1938))).[4] In many, if not all instances, a licensee, such as a roomer or lodger, may be subjected to self-help eviction, *see* POWELL, *supra,* at 16–29 (citing examples), whereas a tenant generally may not be so evicted, *see id.;* P.A. Agabin, Annotation, *Right of Landlord Legally Entitled to Possession to Dispossess Tenant Without Legal Process,* 6 A.L.R.3d 177, 186–189 (1966 & Supp.2000). For the first time since our holding with regard to tenants in *Mendes,* we encounter the question of self-help with regard to roomers or lodgers.

Resolution of this question requires us to revisit our holding in *Mendes.* In *Mendes,* we considered whether a landlord could resort to self-help to evict a tenant notwithstanding the summary possessory action provided by D.C.Code § 16–1501. *See* 389 A.2d at 782. In that case, the landlord had evicted the tenant, who was a tenant by the month, by packing up and removing all of the tenant's possessions. *See id.* After reviewing the evolution of self-help into more current times, we held that "in this jurisdiction, the *landlord's* common law right of self-help has been abrogated, and the legislatively created remedies for reacquiring possession are exclusive. A *tenant* has a right not to have his or her possession interfered with except by lawful process...." *Id.* at 787 (emphasis added). Foremost among the reasons for our decision in *Mendes* were: (1) the use of self-help would be avoided or obviated only if the statutory remedy was deemed to be exclusive; (2) sanctioning the use of self-help in an urban area with housing shortages would invite violence; (3) a tenant evicted by self-help is deprived of an opportunity to assert various equitable defenses and rights afforded by statute or case law; and (4) a law abiding society often requires redress only through established political, legislative, and judicial processes. *See id.* at 786–87. Our holding expressly overruled *Snitman v. Goodman,* 118 A.2d 394 (D.C.1955), which held that the "judicial remedy" was an additional, not the exclusive, means for a landlord to repossess his property from a tenant. *See Mendes, supra,* 389 A.2d at 787. We did not, however, address the propriety of self-help in the context of a roomer.

**B.**

As a threshold consideration, we observe. that in order for Harkins to prevail in this

---

4. In this jurisdiction, the factors considered in determining whether an occupant has exclusive possession include: (1) whether the owner provided furnishings, linens, towels, and daily maid service to the occupant; (2) the owner's right to access the room; (3) the number of rooms provided; (4) the scheduled interval for payment (*e.g.,* daily, weekly, monthly); (5) the substance of the contract between the owner and the occupant; and (6) any other conditions of occupancy. *See, e.g., Anderson v. William J. Davis, Inc.,* 553 A.2d 648, 649 (D.C.1989); *Tamamian v. Gabbard, supra* note 2, 55 A.2d at 514–15.

instance it would be necessary to expressly overrule *Davis v. Francis Scott Key Apartments,* 140 A.2d 188 (D.C.1958), which held, parallel with our holding in *Snitman, supra,* 118 A.2d at 397, that in the case of a roomer, summary judicial action was an alternative remedy to self-help eviction.

We turn now to each of the four policy reasons motivating our conclusion in *Mendes.* The first reason underlying our holding was that self-help would continue to be used in the landlord-tenant context unless the legislative remedy was deemed exclusive. *See* 389 A.2d at 786. In discussing the intent of the statute to abrogate the common law, we limited any such abrogation to landlord-tenant relationships only. We stated that "the landlord's common law right of self-help has been abrogated," and that "[a] tenant has a right not to have his or her possession interfered with except by lawful process." [5] *Id.* at 787. Therefore when we discussed the necessity to abrogate the common law, our discussion was limited to the context of landlords and their tenants only, not to all situations involving real property. A broader construction of our holding could have unforeseen consequences.

The second rationale for our decision in *Mendes* was that self-help against tenants is likely to cause violence. The potential for violence in the context of a roomer is somewhat diminished. First, the roomer is less likely to consider his or her transient accommodation as their "castle" as a tenant may view their rental unit. Roomers may have brought fewer possessions with them into their accommodation. A roomer may not have as much need to remain in a particular accommodation and may be less affected by any housing shortage that may exist within a particular city. Tenants, on the other hand, often cannot as easily find a new permanent residence to house all of their possessions, thus increasing the likelihood of violence when dispossessed. Since the likelihood of violence is diminished in the context of a roomer, though admittedly not altogether absent, our holding in *Mendes* abrogating the common law, to the extent it was predicated upon the likelihood of violence, is not applicable to the same degree in the context of a roomer.

The remaining two policy considerations underpinning our holding in *Mendes* do not advance Harkins's argument any further than the first two. The equitable defenses available to tenants are applicable to roomers, at most, in a limited degree. A roomer does not have an equivalent need for the equitable defenses that a tenant may have when committed to a long-term lease, since the roomer generally has less of a need to remain in possession of a particular accommodation while engaging in litigation. Moreover, Harkins has not explained how any of those equitable defenses would apply in this particular case. Lastly, the parties have not cited, and our research has not revealed, any precedent which squarely supports appellant's contentions in this latter regard. In light of the foregoing, the general policy grounds invoked in *Mendes* have limited application here.

■ As we turn to the crux of this case, appellant, though acknowledging that he was a roomer, emphasizes that the relationship was of long standing. He occupied the room at appellee's hotel for approximately eight months. Given his

---

5. At least one Superior Court decision has extended *Mendes* to roomers. *See Samuel v. King,* 118 Daily Wash. L. Rptr. 2753, 2756 (D.C.Super.Ct. Nov. 9, 1990). Other trial judges, however, have expressed a contrary view. *See, e.g., Corp. v. Maxwell,* No. LT–94–9661 (D.C.Super.Ct. Apr. 1, 1994) (holding roomers, unlike tenants, not entitled to thirty-day notice before self-help eviction).

broad reading of the eviction statute, he urges that our holding in *Mendes* should be extended to include him. However, it is also true that the only document executed between the parties was the registration card completed upon appellant's initial arrival. We note that, appellant was obliged, on a weekly basis, to pay for his furnished room and to make the room accessible for linen and cleaning service. In the context of our present eviction statute, our existing judicial decisions on the subject, and relevant treatises, we decline appellant's invitation to extend the *Mendes* holding to this case, nor are we empowered to overrule *Davis, supra,* 140 A.2d 188.[6] Close scrutiny of this question reveals that there are a range of legitimate concerns to be considered regarding a roomer of long-standing. However, resolution of these concerns both

of the landowner and persons seeking rooming accommodations of various durations is probably better suited, and prudently left, to the legislative forum. *See, e.g.,* N.Y. REAL PROP. ACTS LAW § 711 (McKinney 2001) (providing status of "tenant" and corresponding protections to non-transient occupants of a rooming house or hotel).

### III.

Accordingly, we hold that a transient-accommodation provider may utilize self-help as an alternative means of evicting a nonpaying roomer or lodger.

*Affirmed.*

---

**6.** Only an en banc decision can overrule a prior division of this court. *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971).