# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2792

_____

| | | |
|---|---|---|
| Steve W. Young, | * | |
| | * | |
| Plaintiff/Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Officer Anthony Harrison; Officer | * | |
| Wayne Asscherick; | * | Appeal from the United States |
| | * | District Court for the District of |
| Defendants/Appellees, | * | South Dakota. |
| | * | |
| Officer Mark Widdoss; Officer Olson; | * | [PUBLISHED] |
| | * | |
| Defendants, | * | |
| | * | |
| City of Rapid City; John Q. Hammons | * | |
| Hotels, Inc., doing business as | * | |
| Rushmore Plaza Holiday Inn; Gerald | * | |
| Adcock, | * | |
| | * | |
| Defendants/Appellees. | * | |

_____

Submitted: March 13, 2002

Filed: March 21, 2002

_____

Before FAGG and BEAM, Circuit Judges, and GOLDBERG,[1] Judge.
_____

PER CURIAM.

Steve W. Young appeals from the district court's order granting summary judgment in favor of Officers Harrison and Asscherick, the City of Rapid City, John Q. Hammons Hotels, Inc. (doing business as the Rushmore Plaza Holiday Inn), and Gerald Adcock in this 42 U.S.C. § 1983 case. We affirm.

## I.     BACKGROUND

On December 31, 1998, appellant Young and three of his friends rented a suite at the Rushmore Plaza Holiday Inn in Rapid City, South Dakota. Following several hours of drinking and bar-hopping, Young and his friends returned to the hotel and Young passed out in the bedroom of the suite. Young's friends stayed outside the suite and continued the evening's festivities. Hotel security officer Gerald Adcock informed Young's friends on three separate occasions that they needed to go to their room or to one of the hotel's common areas to avoid disturbing the other guests. The men ignored Adcock's request. Adcock claims that at around 3:00 a.m., he told the men he was evicting them from the hotel for refusing to return to their room and informed them that they had ten minutes to gather their things and exit the premises. Young was so intoxicated he does not recall the events of the evening. Young's friends claim that Adcock never told them they were evicted. In any event, when it appeared to Adcock that the men were not going to leave the hotel, he called the police. Undaunted, Young's friends left their belongings in the suite and went to the hotel restaurant while Young slept in the bedroom. Several minutes later, the police officers arrived at the hotel and accompanied Adcock to Young's room.

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

Adcock knocked on the door, which was propped open, yelled out that he was hotel security and asked if anyone was in the room. Getting no reply, Adcock and the officers entered the suite. Once in the suite, but still outside the bedroom, Adcock could see that someone (Young) was in the bed in the bedroom and he announced his presence once again. After getting no reply, Officers Harrison and Asscherick entered the bedroom and tried to awaken Young by a technique known as a "sternum rub."[2] Young woke up, but apparently was disoriented and attempted to return to sleep on the bed. When Officer Harrison executed another sternum rub, Young reacted violently and shoved Harrison against the wall. The officers placed Young under arrest as a result of his violent outburst. The charges against Young were ultimately dismissed by the prosecutor.

Young then brought this 42 U.S.C. § 1983 action, alleging that his constitutional rights were violated by Officers Harrison and Asscherick because they illegally entered his hotel room and used excessive force against him. Young also sued the City of Rapid City, claiming that it maintains an unconstitutional policy regarding officer involvement in "self-help" evictions. Finally, Young alleges that John Q. Hammons Hotel, Inc. and Adcock conspired with the police to violate his rights.

## II.   DISCUSSION

We review a district court's grant of summary judgment de novo. Wilson v. Spain, 209 F.3d 713, 716 (8th Cir. 2000). Summary judgment is properly granted when, viewing the facts and reasonable inferences in the light most favorable to the nonmoving party, it is clear no genuine issue of material fact remains and the case

---

[2]A sternum rub is accomplished by applying pressure with the knuckles upon a person's sternum. Not surprisingly, this technique can successfully awaken people from a deep sleep.

may be decided as a matter of law.  Greeno v. Little Blue Valley Sewer Dist., 995 F.2d 861, 863 (8th Cir. 1993).

## A. Officers Harrison and Asscherick

Young claims that when Harrison and Asscherick entered his hotel suite and arrested him they violated his Fourth and Fourteenth Amendment rights to be free from unreasonable searches, seizures and excessive force.  Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).  But, public officials are entitled to qualified immunity and shielded from liability when their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated plaintiff's clearly established right."  Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996).  We think it is unlikely that Young has proven a violation of his constitutional rights.  In any event, if the officers did violate Young's rights, they were not clearly established and the officers acted reasonably.

Young claims that when the officers entered his suite without a warrant, consent, or exigent circumstances, they violated his Fourth Amendment rights.  It is clear, he says, that the protections against warrantless intrusions into the home apply equally to a properly rented hotel room during the rental period.  See, e.g., United States v. Morales, 737 F.2d 761, 765 (8th Cir. 1984); United States v. Baldacchino, 762 F.2d 170, 175-76 (1st Cir. 1985).  Young argues, and it appears that he is

correct, that South Dakota statutes do not distinguish between the status given to various leasehold interests in real property based upon whether the lease is for a house, apartment or hotel room.[3] Young argues that South Dakota law does not provide for the summary eviction of a hotel guest and, therefore, his eviction was illegal because the hotel and the officers did not follow the procedures set out in South Dakota's Forcible Entry and Detainer statute.[4] Using this logic, Young's rental period at the hotel did not end when Adcock told him and his friends to leave, and so it follows that the police could not simply enter his room absent a warrant, consent, or exigent circumstances.

---

[3]The statute governing leases provides: "Leasing is a contract by which one (the lessor or landlord) gives to another (the lessee or tenant) temporary possession and use of real property for reward and the lessee agrees to return such property to the lessor at a future time." S.D. Codified Laws § 43-32-1. The only statute that appears to cover lodging is found in the same statutory section and merely defines the presumption for the length of the stay. "A hiring of lodgings for an unspecified term is presumed to have been made for such length of time as the parties adopt for the estimation of the rent. Thus a hiring at a weekly rate of rent is presumed to be for one week. In the absence of any agreement respecting the length of time of the rent, the hiring is presumed to be monthly." S.D. Codified Laws § 43-32-4. It appears that South Dakota does not have a statute, like many states, that defines the relationship between a hotel and its guests. South Dakota law is simply silent on the question of whether a hotel guest is a tenant or a licensee.

[4]"In all cases arising under subdivisions 21-16-1 (4), (5) and (6), three days' written notice to quit must be given to the lessee, subtenant, or party in possession, before proceedings can be instituted, and may be served and returned in like manner as a summons is served and returned. On the second service attempt, at least six hours after the previous service attempt, the notice to quit may be posted in a conspicuous place on the property, and also delivered to a person there residing, if such person can be found; and also sent by first class mail addressed to the tenant at the place where the property is situated." S.D. Codified Laws § 21-16-2.

The officers cite United States v. Rambo, 789 F.2d 1289, 1296 (8th Cir. 1986), for the proposition that Young cannot assert an expectation of privacy in a hotel room from which he has been justifiably expelled. Rambo, however, relied directly on a Minnesota statute that authorized innkeepers to summarily evict guests for cause. Id. at 1295. Rambo reasoned, correctly, that once a guest has been *justifiably* expelled, the guest is without standing to contest an officer's entry into his hotel room on Fourth Amendment grounds. Id. at 1296. But, in Rambo, the justification for the expulsion came from a state statute authorizing the expulsion. As indicated, South Dakota does not have a statute governing hotel evictions and, therefore, reliance on Rambo is misplaced unless the officers can otherwise succeed in proving that Young's eviction was justified.

As noted, Young argues that his eviction was not justified because the hotel and officers did not follow the procedures for evicting a tenant provided by South Dakota's Forcible Entry and Detainer statute. This position is untenable. To comply with the requirements of South Dakota's statute, a landlord must give a tenant at least three days notice that eviction is planned. In addition, the statute allows for a jury trial to determine if the eviction is justified. These requirements are obviously nonsensical in the context of a hotel guest, especially one that is only lodging for one night. Although South Dakota appears to have never faced or decided the issue of whether a hotel guest is a tenant or something less, like a licensee, we think that if faced with the issue, South Dakota would join many other jurisdictions in concluding that a hotel guest is not a tenant and is subject to self-help eviction. If Young's eviction was justified, Rambo's holding applies, and Young's claim that the officers unconstitutionally entered his hotel suite must fail.

Many jurisdictions draw a distinction between a tenant and a hotel guest by reasoning that the tenant acquires an interest in the real estate and has the exclusive possession of the leased premises, whereas the guest acquires no estate and has mere use without the actual or exclusive possession. See, e.g., Coggins v. Gregorio, 97

F.2d 948, 950 (10th Cir. 1938); Marden v. Radford, 84 S.W.2d 947, 955 (Mo. Ct. App. 1935); Green v. Shoemaker & Co., 73 A. 688 (Md. Ct. App. 1909); Linwood Park Co. v. VanDusen, 58 N.E. 576, 581 (Ohio 1900); White v. Maynard, 1872 WL 9054 (Mass. 1872). In fact, the New York Supreme Court, following English common law, held that a hotel guest was not considered a tenant. "When one contracts with the keeper of a hotel or boarding-house for rooms and board, whether for a week or a year, the technical relation of landlord and tenant is not created between the parties. The lodger acquires no interest in the real estate." Wilson v. Martin, 1845 WL 441 (N.Y. Sup. Ct. 1845).

Recently the District of Columbia Court of Appeals was faced with the issue of whether a hotel owner may evict a guest using self-help as the means of eviction. Harkins v. WIN Corp., 771 A.2d 1025 (D.C. Ct. App. 2001). Harkins held, despite a D.C. Code that required judicial process for eviction, that a hotel operator was not required to follow that process and could evict by means of self-help. Id. at 1027. The court distinguished between tenants and guests by noting that, "[i]n many, if not all instances, a licensee, such as a roomer or a lodger, may be subjected to self-help eviction, see 2 Richard R. Powell & Patrick J. Rohan, Powell on Real Property § 16.02[3][ii], at 16-29 (Michael A. Wolf ed. 2000) (citing examples), whereas a tenant generally may not be so evicted." Harkins, 771 A.2d at 1027. See also Hutchins v. Town of Durham, 24 S.E. 723, 727-28 (N.C. 1896) ("Where a guest in [a] hotel . . . creates a disturbance, though [he] has a right under his contract to remain so long as he acts with due regard to the rights of others, the proprietor . . . or their agents, may use the amount of force necessary to expel.").

Young did not direct us to, and we did not independently uncover, any precedent for concluding that South Dakota hotel guests might be tenants. Young simply relies on the fact that South Dakota statutes do not distinguish between hotel guests and tenants. However, that observation alone does not mean that hotel guests are tenants. The great weight of authority leads us to conclude that the better view

is that hotel guests are not tenants, and therefore hotel guests do not have all of the rights afforded tenants under South Dakota's Forcible Entry and Detainer statute. When Young was justifiably evicted from the hotel because his friends created a disturbance, the control over the hotel room reverted to the management and Young "cannot assert an expectation of being free from police intrusion upon his solitude and privacy in a place from which he has been justifiably expelled." Rambo, 789 F.2d at 1296.

Even if Young is correct and his constitutional rights were violated when the officers entered his room, the preceding analysis makes it painfully clear that his rights were not "clearly established." Habiger, 80 F.3d at 295. Young concedes that there is no South Dakota law requiring that the police get a warrant before entering an evicted guest's hotel room. For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (internal citations omitted). Young has failed to prove that the officer's conduct was clearly unlawful. Young has pointed to no statutory or case law supporting his position. Our own review reveals that the great weight of authority favors the officers and not Young.

In sum, Young's constitutional rights were not violated by the officers' entry into his hotel suite because when a hotel guest is properly evicted he loses the Fourth Amendment's protection against warrantless entry. Even leaving that analysis aside, it is obvious that the officers did not violate any clearly established rights.

Finally, Young's claim that the officers used excessive force is simply unsupported by the record. The minor scrapes and bruises Young received were the

result of his attack on the officer. When Young assaulted the officer, the officer had the right to make an arrest, which necessarily carries with it the legal authority to use reasonable force to accomplish the arrest. Graham v. Connor, 490 U.S. 386, 396 (1989). There is no evidence that the officers used anything more than the force needed to arrest Young.

## B.     City of Rapid City

Young claims that Rapid City violated his constitutional rights by illegally entering his hotel suite pursuant to a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Williams v. Butler, 863 F.2d 1398, 1400 (8th Cir. 1988), citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). To support this contention, Young points to General Order 89-7 (the Order), promulgated by the Rapid City Police Department, which states, in part,

> 4. When it is clear to an officer that the person is a "transient guest" (has resided less than four consecutive weeks in the same residency) the officer can ask the tenant to leave or face being arrested for unlawful occupancy under SDCL 22-35-6 or trespassing under Rapid City Revised Code of Ordinances 17-41(a).

Young claims that this policy is contrary to South Dakota law. To support this claim, Young again relies on his theory that a person "leases" a hotel room like any other tenant and he cannot be evicted without adherence to the procedures afforded tenants under the state's Forcible Entry and Detainer statute. Young concludes, therefore, that summary eviction of hotel guests pursuant to General Order 89-7 is contrary to state law.

As this claim relies on the theory that a hotel guest is a tenant, the claim against the city fails for the same reason Young's claim against the officers fails–a hotel guest

is not a tenant and adherence to the eviction statute is not required to expel an unruly guest from a hotel.

Leaving aside the analysis from the preceding section that a hotel guest is not a tenant, an additional problem for Young is that the Order does not authorize the summary eviction of individuals with leasehold interests in real property. The Order allows for an officer to make an arrest if an individual is in violation of South Dakota Codified Laws 22-35-6, which provides that "[a]ny person who, knowing that he is not privileged to do so, enters or remains in any place where notice against trespass is given . . . is guilty of a Class 2 misdemeanor." In other words, the Order allows for the summary arrest of a trespasser who has been on a particular property for less than twenty-eight days–it does not allow for the summary eviction of a tenant with a leasehold interest. Put simply, even if Young was correct in his assertion that he did have a bona fide leasehold interest in his hotel suite, he could not have been arrested and evicted pursuant to the Order, because the Order governs trespassers and not tenants. Municipal liability only attaches if "the action that is alleged to be unconstitutional implements or executes . . . a decision officially adopted and promulgated by that body's officers." Monell, 436 U.S. at 690. The officers entry into Young's hotel room could not have been implementing the Order if Young was correct in his assertion that he was a tenant at the hotel.

### C.     John Q. Hammons, Hotels Inc. and Gerald Adcock

Young alleges that security guard Adcock conspired with the police to deprive Young of his civil rights. Private parties are only liable under 42 U.S.C. § 1983 when they have been jointly engaged with public officers in the denial of civil rights. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Young has presented no evidence, beyond Adcock's calling the police, to support the proposition that Adcock was conspiring with the police to violate Young's civil rights. "A private person does not conspire with a state official merely by invoking an exercise of the state official's

authority."  Tarkowski v. Robert Bartlett Realty Co., 644 F.2d 1204, 1208 (7th Cir. 1980).  Young has not presented any evidence that Adcock and the police had a meeting of the minds with regard to violating Young's constitutional rights.  There is not sufficient evidence that would enable a rational factfinder to conclude that the officers' conduct at the hotel resulted from concerted action "tantamount to substituting the judgment of a private party for that of the police or allowing the private party to exercise state power."  Alexis v. McDonald's Rest., 67 F.3d 341, 352 (1st Cir. 1995).  The only facts on which Young relies consist of Adcock calling the police and bringing the officers to the suite.  This is not enough to bring Adcock and the hotel he worked for under the purview of section 1983.

## III.  CONCLUSION

For the reasons stated, the order of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.