**Thomas R. WILSON, et al., Appellants,**

v.

**Thomas A. HART, Jr., et al., Appellees.**

**No. 01–CV–390.**

District of Columbia Court of Appeals.

Argued Nov. 25, 2002.
Decided July 31, 2003.

Ronald L. Webne, for appellants.

James C. McKay, Jr., Senior Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel at the time the brief was filed, were on the brief, for appellee District of Columbia.

Gary D. Wright, Bethesda, MD, filed a Notice in lieu of brief for appellee Thomas A. Hart, Jr.

Before STEADMAN, SCHWELB and REID, Associate Judges.

STEADMAN, Associate Judge:

Appellants were occupying an apartment in a building owned by appellee Thomas Hart. They vacated the premises at the request of District police, allegedly at the instigation of Hart who asserted that appellants had no right to be in the apartment. In a wrongful eviction action brought by appellants against Hart and the District of Columbia, the trial court granted summary judgment in favor of the defendants. It did so on grounds of res judicata and collateral estoppel, based on a prior agency proceeding before the rental housing authorities. We hold that although collateral estoppel bars appellants' claim insofar as it is based on any direct landlord-tenant relationship between Hart and appellants, there remains a genuine issue of material fact whether a subtenancy existed that may allow appellants to recover under our holding in *Young v. District of Columbia*, 752 A.2d 138 (D.C. 2000).

## I. Background

The parties have sharply differing accounts with respect to the events surrounding appellants' occupancy of the apartment.[1] According to the appellants, they saw a "for rent" sign on February 17 and spoke to Lawrence Bey, who they thought was the building manager. Bey took them to see Hart, who identified himself as the owner. Discussions took place and it was agreed that appellants could rent the apartment for $400 a month. Appellants purchased a money order for $200 payable to Hart and gave it to him as rent for the remainder of February.[2] On March 17, Hart appeared and demanded that they leave the premises immediately. Appellants called the police, but after a conversation with Hart, the police ordered appellants to leave immediately under threat of arrest.

Hart, supported by Bey, asserted that the apartment in question was under lease to Bey, with a clause that permitted occupancy by only one person and prohibited Bey from subletting or placing anyone else in possession of the apartment without Hart's written consent. Bey entered into an oral agreement with appellants which allowed appellants to remain in the apartment for two weeks. At Bey's request, appellants obtained a $200 money order payable to Hart, which Bey turned over to Hart in payment of back rent. Hart subsequently became aware of appellants' occupancy and asked them to leave since they had no right to be there. When they refused, the police were called. Appellants then left voluntarily and without force.

On or about the day of their eviction, appellants filed a tenant petition against Hart with the Department of Consumer and Regulatory Affairs, Rental Accommodations and Conversion Division. The petition alleged a wide range of violations of various provisions of the rental housing laws. In response, Hart filed a motion to dismiss the petition, asserting that the predicate landlord-tenant relationship did not exist between the parties. After a hearing, the hearing examiner determined that "Respondent's motion to dismiss should be granted because there has not been a landlord tenant relationship established here," and that Bey "was acting beyond the scope of his authority when he made arrangements with the petitioners." The petition was dismissed with prejudice.

Petitioners appealed to the Rental Housing Commission. The Rental Housing Commission remanded the case to the hearing examiner for "clarification." The hearing examiner corrected a finding of fact to state that petitioners "did not reside at 302 Florida Avenue, N.W., as tenants of Respondent, Thomas Hart"[3] and again dismissed the petition with prejudice on August 3, 1998. No motion for reconsideration or further appeal was taken.

On March 13, 2000, appellants filed a complaint in Superior Court against Hart and the District of Columbia, alleging wrongful eviction and breach of covenant of quiet enjoyment. Answers were filed and Hart and the District both filed motions for summary judgment, asserting res judicata and collateral estoppel based on the unappealed hearing examiner's final decision. The appellants opposed the mo-

1. The respective accounts are presented in quite summary form, synthesized largely from the filings in the trial court, augmented by the agency documents insofar as they are included in the record.

2. After moving in, appellants complained of several housing code violations.

3. The original finding had omitted the word "not," which led to the remand for clarification.

tion. On February 12, 2001, the trial court dismissed appellants' complaint on the grounds of res judicata and collateral estoppel because appellants had received a hearing on the merits and "[t]here is no dispute, nor could there be, that the Hearing Examiner dismissed the petition because no landlord-tenant relationship existed between the parties." The District no longer defends the trial court decision on the ground of res judicata,[4] so that only the collateral estoppel issue is before us for review.

## II. Collateral Estoppel

■■■ Even where res judicata is inapplicable, collateral estoppel or issue preclusion may bar relitigation of issues determined in a prior action. That doctrine can be invoked against a party where (1) the issue was actually litigated; (2) was determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the party; (4) under circumstances where the determination was essential to the judgment. *See, e.g., Hogue v. Hopper,* 728 A.2d 611, 614 (D.C. 1999).[5] "Collateral estoppel applies not only to judicial adjudications, but also to determinations made by agencies other than courts, when such agencies are acting in a judicial capacity." *Id.; see also District Intown Properties v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 680 A.2d 1373, 1378 n. 7 (D.C. 1996).

■■■ The question then arises as to exactly what was the "issue" that was finally determined in the agency proceedings. As we read the hearing examiner's decision, it was based on the proposition, right or wrong, that the appellants had no rights against Hart under the Rental Housing Act because no direct landlord-tenant relationship existed between appellants and Hart and any arrangements Bey made were beyond his authority.[6] While appellant argues that the dismissal was not "on the merits" but instead was based on lack of jurisdiction or standing, the agency plainly had power to grant relief on the claims presented by appellants if they proved all the requisite factual elements to establish such relief. Appellant's failure after a full hearing to show what the hearing examiner believed to be the required landlord-tenant relationship led to the dismissal with prejudice, a decision made on the merits in denying the relief sought.

---

4. At oral argument, the District abandoned the *res judicata* argument, conceding it was only arguing for preclusion under collateral estoppel. Presumably the District felt it was unable to show that appellants could have brought and recovered on their Superior Court claim of damages for wrongful eviction in the agency proceeding. Since Hart filed no separate brief but rested on that of the District and did not participate in oral argument, we deem him bound by the District's concession.

5. The doctrine may be invoked defensively by one who was not a party to the prior case, in this case the District. *See Carr v. Rose,* 701 A.2d 1065, 1076 (D.C.1997).

6. While it might well be possible, as the District argues, to interpret the hearing examiner as having more broadly excluded any sort of tenancy relationship to the premises on appellants' part, *see, e.g.,* D.C.Code § 42–3501.03(36) (2001)(defining "tenant"), we are not fully satisfied that issue was precisely ruled upon, particularly given the corrected factual finding that appellants did not reside on the property "as tenants of Mr. Thomas Hart," and the discussion in the hearing examiner's opinion that a sublease creates no legal relationship between the landlord and the subtenant. We are further inclined to take a narrow view of the hearing examiner's decision because of the absence of a transcript of the hearing on which it was based. See note 3, *supra.* Clarity of determination of a particular issue is a prerequisite to application of collateral estoppel. *See Major v. Inner City Property Management,* 653 A.2d 379, 382 (D.C.1995) and cases cited.

*See, e.g., Hogue v. Hopper, supra* (arbitrator's determination that Hogue had failed to show error in tax return entitling him to added partnership payout collaterally estoppel claim of such error in action against accountant).[7] Thus, to the extent that appellants' suit in Superior Court against Hart and the District depends upon the establishment of a direct landlord-tenant relationship, we agree with the trial court that collateral estoppel operates to preclude recovery.[8]

■ The analysis, however, cannot stop there. In *Young v. District of Columbia, supra,* we held that even where a master lease prohibits the lessee from subleasing or transferring possession of the premises, an unauthorized sublessee has a sufficient interest in the property to prohibit the use of self-help for an eviction, at least by the sublessor.[9] Such a sublessor-sublessee relationship gives rise to a sufficient tenancy to require court process to remove an occupant from the premises. Where there is a genuine issue of material fact as to whether there was a subtenancy, summary judgment is inappropriate as the potential

subtenants may have had a right of action arising out of their removal by self-help. *Id.*

Here, appellants and Hart are in sharp dispute as to exactly what transpired in connection with appellants' occupancy of the property and the role of Bey. The hearing examiner apparently considered it sufficient for purposes of the agency proceeding to determine that no direct landlord-tenant relationship existed between appellants and Hart. However this may be in the context of agency relief, *Young* establishes that wrongful eviction may lie in the case of a sublessee. It is true that in the complaint and an affidavit to support the opposition to summary judgment, appellants asserted that their "agreement to rent the subject premises was with Mr. Hart directly and not with Mr. Bey." But in the opposition itself, appellants listed as material matters in dispute "whether plaintiffs entered into a lease agreement with Bey to lease the premises" and "whether the hearing examiner determined in his final decision that no subtenancy was created between plaintiffs and

---

7. *Clay v. Faison* 583 A.2d 1388 (D.C.1990), relied on by appellants, does not dictate otherwise. There the prior dismissal was determined to be one based on a lack of jurisdiction since the action should have been brought in another division of the court (as contrasted with the alternate ground of failure to state a claim, rather more akin to the ruling of the hearing examiner here).

8. The fact that an issue determination is made in connection with a different underlying claim does not preclude collateral estoppel effect. *Johnson v. Capital City Mortgage Corp.*, 723 A.2d 852, 857 (D.C.1999) (citing *Carr v. Rose, supra,* 701 A.2d at 1076.)

9. *Young* was an application of the rule in this jurisdiction that a landlord may not use self-help to evict a tenant, first established in *Mendes v. Johnson*, 389 A.2d 781 (D.C.1978) (en banc). In *Young*, the self-help eviction was brought about by the sublessor at the landlord's insistence, even though the master

lease had terminated, since the sublessor had the responsibility to see that the sublessee vacated the premises in order to surrender them to the landlord. 752 A.2d at 142. We expressly left open the question as to the master lessor's eviction rights directly against the sublessee. 752 A.2d at 143 n. 8. In the absence of any clear factual determination as to the precise status of appellants' occupancy of the property, we do not address that issue here nor the issue whether a wrongful eviction or breach of quiet enjoyment action may lie even if appellants' occupancy constituted something less than some sort of tenancy. *See Harkins v. WIN Corp.*, 771 A.2d 1025, 1027, *modified and rehearing denied*, 777 A.2d 800 (D.C.2001) (protection against self-help evictions generally not available to roomer or lodger); *Bown v. Hamilton*, 601 A.2d 1074, 1077 (D.C.1992) (quiet enjoyment is a covenant implied in leases).

Mr. Bey." Even Hart acknowledged that Bey entered into some kind of a "verbal agreement" with appellants, and the precise legal consequences of the appellants' disputed factual assertions as to their interaction with Bey and Hart may well have been somewhat murky in appellants' minds.[10]

In short, we conclude that the doctrine of collateral estoppel cannot be extended to preclude the possibility of appellants establishing sufficient sublessee rights in the apartment to bar self-help. Hence, to that extent, the dismissal of appellants' complaint must be reversed and the case remanded for further proceedings consistent with this opinion.[11]

*So ordered.*

**10.** According to the hearing examiner's decision, appellants had asserted that Hart was aware of their presence as tenants and it was their understanding that he had given his permission for them to become tenants.

**11.** The District alternatively argues that as a matter of law on this record the officers had a good faith reasonable belief that plaintiffs were unlawfully on the premises. No such argument was made to the trial court and we decline to address it for the first time on appeal.